**CLARKE v. UNITED STATES.**
Civ. No. 6272.

United States District Court,
D. Maryland.
Oct. 2, 1953.

Philip H. Dorsey, Jr., Leonardtown, Md., for plaintiff.

George Cochran Doub, U. S. Atty., James B. Murphy, Asst. U. S. Atty., Baltimore, Md., for defendant.

CHESNUT, District Judge.

This is a suit under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b) and 2671 et seq. The accident occurred on government property in Charles County, Maryland, known as Indian Head Powder Plant. The plaintiff was an employee of Day & Zimmerman, Inc., independent contractors, who were installing a steam pipe line at the place where the accident occurred and where the plaintiff was engaged as a steamfitter. The accident occurred July 28, 1952. The plaintiff was at work on an A–type ladder standing about 7 feet from the ground and was engaged at the time in spacing and levelling up one section of the steam pipe. There was a cross-bar stretching across the roadway where the plaintiff was working which was struck by the top of a truck operated by an employee of the government acting in the line of his duty. The impact of the truck against the cross-bar displaced it so that it struck the plaintiff or ladder, and knocked the plaintiff to the ground, from which he sustained physical injuries.

The United States first filed a third-party complaint against Day & Zimmerman, Inc., as a joint tort feasor, which, however, was subsequently voluntarily dismissed by the United States because the plaintiff's injuries, so far as Day & Zimmerman were concerned, were covered by the Maryland Workmen's Compensation Law, Code 1951, art. 101, § 1 et seq., which it has been decided in Maryland, prevents any action against the employer and limits recovery against it only in accordance with the Compensation Act. The plaintiff did apply for and receive some compensation under the Act. See Standard Wholesale Phosphate & Acid Works v. Rukert Terminal Corp., 193 Md. 20, 65 A.2d 304; Baltimore Transit Co. v. State, Use of Schriefer, 183 Md. 674, 39 A.2d 858, 156 A.L.R. 460; Halcyon Lines v. Haenn Ship Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318. From the evidence at the trial of the case I find the following facts.

1. The steam pipe referred to was an 8-inch pipe which had been fabricated at the nearby shop. It consisted of a right angled inverted "U" having two vertical sides and a cross-bar at the top, and when completely installed it formed an archway over a roadway and the bottom ends of the vertical sides were to be closely fitted into connecting pipes carried on posts leading from each side of the roadway. The roadway was about 15 feet wide with gravel surface and was one of several roadways wholly on the government property and not publicly travelled roadways but designed for the convenience of the government plant, and frequently used by government vehicles in the course of activities at the plant. A photograph offered in evidence taken about two days after the accident shows the steam pipe as finally installed. It will be observed that the roadway was comparatively narrow and bordered on each side by trees. Its nature was that of a private country road. There were overhead crossing steam pipes or other similar structures at other places on the same roadway and on similar nearby roadways running parallel. The 8-inch steam pipe particularly referred to, where the accident occurred, had a horizontal pipe which spanned the roadway overhead about 16 feet from the surface of the road. The distance of the overhead span of other pipes on the same and

other roadways was not established in the evidence.

When the particular steam pipe was fabricated at the shop, consisting of two vertical pipes with a horizontal crossing pipe at the top, the weight of the pipes was such that to prevent distortion of alignment in transportation from the shop to its destined location, a transverse bar called a "spreader bar" parallel to the top horizontal bar was lightly welded to the two vertical sides at a distance of about six feet below the horizontal pipe. In order to closely fit the bottom ends of the vertical sides of the pipe into the connecting pipes on either side of the roadway the whole framework of the "U" shaped pipe was temporarily suspended by other means over the roadway and then gradually lowered into place. But before the close and exact "truing up" and fitting of the vertical sides into the connecting pipes on either side of the roadway, it was necessary to first remove the so-called temporary stretching bar by cutting off the light or temporary welding, and thereafter, in order to make the exact careful adjustments the work required the placing of another bar called an "adjustment bar" between the vertical sides. This second stretcher or adjustment bar included a so-called jack screw which was used to adjust the precise required distance between the vertical sides of the pipe so that they could be closely fitted into their connecting pipes with the other pipes on each side of the roadway.

2. The accident occurred between 12:30 and 1:00 p. m., on July 28, 1952. The first temporary stretcher bar had been cut away from the vertical sides and the second temporary bar, that is the adjustment bar with the screw device, was in place. It had also been lightly welded to one of the vertical sides. The jack screw in connection with this second bar was being used by the plaintiff and his fellow workman, one Shafer, to "true up" the pipes so that the ultimate final exact fitting could be made. Clarke, the plaintiff, was on the ladder, which was at one side of the roadway,

making the necessary levelling adjustments. Shafer was at the bottom of the ladder about where the final fitting of the vertical pipes with the longitudinal pipes was to be made. The defendant's truck driven by one Atlee, a colored employee, came down the roadway and the top of the truck struck the adjustment bar about one inch below the top of the truck. The force of the contact was such that the bar, only lightly welded at one end, was displaced and struck the plaintiff or the ladder on which the plaintiff was standing and threw him to the ground. The truck was an ordinary stake-body truck with a canvas top. Its precise height at the time and the precise height of the adjustment bar which it struck were not offered in evidence. It appeared, however, that the height of the truck and the height of the adjustment bar was approximately 9 or 10 feet from the ground. Atlee, the truck driver, was alone on the truck at the time. He was travelling at about 10 miles an hour which was the prescribed maximum speed for the roadways at the plant. The adjustment bar was, of course, clearly visible to him as he approached it and he also saw the ladder and the workmen there at the time. He made no effort to ascertain the clearance of the bar from the ground. Shortly after the accident other employees of Day & Zimmerman and the government visited the scene and found the adjustment bar, which had been struck by the truck, lying on the ground. It was a steel pipe about 2 to 3 inches in diameter. The first stretcher bar which had been removed prior to the accident was not found at the place and its disposition was not accounted for in the evidence. There is some conflict or uncertainty in the evidence as to just when it had been removed from between the vertical sides of the pipe, whether earlier that day or the day before.

3. The plaintiff was rendered temporarily unconscious by the fall and was taken to a hospital where his injuries were diagnosed as five broken ribs. His chest was strapped and in two days he was permitted to return home where he

remained for about five weeks, after which he returned to work for Day & Zimmerman and he says he was given somewhat lighter work by the foreman. He filed a claim against his employer, Day & Zimmerman, Inc., under the Maryland Workmen's Compensation Act and was awarded a weekly payment of $32 for temporary disability. He was earning at the time about $100 a week as wages. His weekly compensation was paid to him by Day & Zimmerman's insurer, the Liberty Mutual Insurance Company, in the total amount of $170.67 for weekly compensation, and $187.85 for medical bills. Since his compensation payments were terminated he has made no further claim for compensation. His fractured ribs healed without complication but he still complains of some soreness or back strain from time to time which somewhat interferes with heavy work, although it does not appear that he has lost any wages other than above stated. The plaintiff was examined by a Naval surgeon on August 7, 1953, a year after the accident. His findings were in substance that the plaintiff complained of a sore spot on one of his arms which the surgeon found did not interfere with his ordinary activities and which it was thought could be remedied or benefited by some treatment. The surgeon also found that there was a temporary 10% partial disability as a result of muscular back strain which, however, would not be permanent.

4. The main controversy on the facts is with regard to (1) whether the first stretcher bar had been removed during the morning of July 28th or the day before, and (2) whether Atlee, the defendant's truck driver, had driven his truck under the archway twice previously on the same day without contact with the cross-bar. The defendant's contention on the evidence was that the temporary stretcher bar which accompanied the "U" shaped pipe from the shop had not been removed during the morning of the accident and that while it was still in place Atlee had twice driven the truck under the archway without trouble and there-fore supposed that on the third occasion there would be no trouble in driving under the pipe, but that the trouble was due to the fact that the first stretcher bar had in the meantime been removed and the second stretcher or expansion bar had been erected about six inches lower than the first stretcher bar. Atlee testified that he had driven without trouble under the archway twice before the accident. On one or more of these two occasions he was accompanied by two fellow workmen whom he was transporting from one part of the plant to another. They were in the rear of the covered truck. They, to some extent at least, corroborated Atlee's testimony. On the contrary, however, both the plaintiff Clarke and his fellow workman Shafer testified very definitely first that the original stretcher bar had not been removed from the vertical sides of the steam pipes that day and also that during the whole time that they were there from 7:30 a. m., no truck or other vehicle had passed under the archway. On this direct conflict between Atlee and his two passengers, and the evidence of the plaintiff and Shafer, I find the testimony of the latter to be more convincing and I accept it as the fact in the case. Shafer particularly seemed to me to be a personally disinterested and reliable witness. There was some testimony given by Gifford, the foreman on the job for Day & Zimmerman, tending to show that he had directed two welders to cut loose the first stretcher bar early that morning; but his testimony indicated that he was not sure whether that had been done that morning or the day before. The welders referred to by him were not produced as witnesses and the original stretcher bar was not found at the location after the accident, and its disposition was not otherwise explained.

The question in the case is whether the defendant's truck driver, Atlee, was negligent in driving the top of his truck against the expansion bar in place at the time and under the circumstances found to have occurred. As previously noted, he saw that the plaintiff

and Shafer were working on the pipe fitting at the time and that the plaintiff was on the ladder at the side of the road. The adjustment bar must, of course, have been in plain sight. From a mere glance at it he must or at least should have noticed that its clearance was at least sufficiently low to require a more careful examination on his part with respect to whether the truck could safely pass under the bar. Probably he did not know the precise function that the bar was serving at the moment nor exactly what the workmen were doing. But at least the circumstances were such as necessitated care on his part in approaching the obstruction. It is my opinion that under all the circumstances he did not observe reasonable and ordinary care in attempting to pass under the adjustment bar without further inquiry and examination. It is clearly the duty of one driving an automobile to keep a careful lookout forward to ascertain what is in the path of the vehicle. This he did not do. I conclude, therefore, that he was guilty of negligence which proximately caused the plaintiff's injuries. Norfolk Southern Ry. Co. v. Davis Frozen Foods, 4 Cir., 195 F.2d 662.

■■ The status of the plaintiff as an employee of Day & Zimmerman, the independent contractor, was at least equal to the dignity of an invitee on the defendant's premises; and the defendant under the Maryland decisions owed to him the duty to exercise toward him reasonable care with respect to the duties of his employment. Virginia Dare Stores, Inc., v. Schuman, 175 Md. 287, 1 A.2d 897; LeVonas v. Acme Paper Board Co., 184 Md. 16, 40 A.2d 43; Sears, Roebuck & Co. v. Wallace, 4 Cir., 172 F.2d 802. See also, under somewhat different facts, Duff v. United States, 4 Cir., 171 F.2d 846. Atlee's excuse for driving under the archway at the time was that he had previously safely driven under the archway earlier that day and did not know that the height of the cross-bar had been lowered. While I do not accept the accuracy of that excuse on the facts it is at least doubtful whether, under all the circumstances, it would have been legally a sufficient excuse. The presence of the workmen and of the ladder with the knowledge that the work was going on would seem to have been sufficient to have put the truck driver on inquiry as to the height of the cross-bar at the time. At the most, the height of the original bar and the second bar was a difference of only six inches. It did not appear that Atlee had made any particular inquiry to ascertain the clearance of the original bar when he drove under it, as he said, earlier in the morning.

The contention of the defendant with respect to the existence or absence of negligence is predicated on the testimony of Atlee to the effect that he had previously driven under this very archway of steam pipes earlier that day and had also frequently driven under other archways of overhead steam pipes crossing the road on this very roadway and other similar roadways at the defendant's plant. And therefore Atlee had no reason to suspect any change in the clearance of the pipe. The defendant also contends that the sole negligence in the case was the failure of Day and Zimmerman to put up some roadblock signs or signs as to the exact amount of clearance. It will be remembered, however, that Day and Zimmerman were independent contractors working for the defendant on its own premises, and the function of the adjustment bar in place at the time of the accident was only a temporary one for the purpose of "truing up" the vertical steam pipes. The roadway was not a public roadway but one used only by the landowner on its own property. There is no evidence that the plaintiff and his fellow workman Shafer were under any duty by instruction or otherwise to put up roadblocks or height of clearance signs. It would seemingly have been impracticable to put up a height clearance sign on this very temporarily used adjustment bar. Nor was there any evidence to show that the plaintiff or Shafer, in the exercise of ordinary care, should have anticipated that the defendant's truck driver would at-

tempt to pass under the adjustment bar without ascertaining its clearance from the roadway, as it was plainly observable to any one approaching it.

The defendant has not raised any question with regard to contributory negligence, if any, of the plaintiff in the case. Nor is there any question presented as to Day & Zimmerman being a possible joint tort feasor and no point has been raised as to whether the independent contractor's compensation insurer is to be subrogated to the rights of the plaintiff to the extent of the payments that it has made.

Reference has been made to the photograph in the case giving a picture of the general nature of the roadway and of the 8-inch steam pipe arching it. (Def.Ex. No. 1). It will be noted that the overall height of the horizontal bar of the steam pipe itself was about 16 feet from the ground. It obviously furnished no obstruction to a truck, the height of which was not more than 10 feet. It will also be noted on observing the photograph that there are three parallel lines appearing on the photograph about six feet or more below the upper horizontal steam pipe. Two of these lines are in red and obviously, as it was stated by counsel for the defendant, were placed on the photograph after it was taken. There will also be seen a third smaller bar appearing to be white on the photograph, which is below the two red lines. The function, appearance or presence at the time of the accident of this third white line does not appear in the testimony. Nor does it appear whether such a pipe or structure was there at the time of the accident. Counsel for the defendant states that he understood there was such a pipe there but that it was in fact higher from the ground than either the original spacing bar or the second adjustment bar referred to in the evidence. The two red lines superimposed on the photograph are supposed to represent the difference in clearance between the first and the second adjustment bars and counsel for the defendant further states that both of them were in fact nearer to the ground than the white pipe or bar shown on the photograph. Without this explanation as made by counsel for the defendant during the argument on inquiry from the bench, the photograph itself might be misleading to the observer.

As a conclusion of fact and law I find for the plaintiff. I have carefully considered the question of the amount of damages to be allowed the plaintiff and have heard the views of counsel for the parties on that subject. Considering the usual applicable rule of law with regard to the elements of damage for which the plaintiff is entitled to recover, I think, without unnecessary further discussion, the amount of the judgment in favor of the plaintiff should be and is hereby set at $1,500.