# KAPLAN *v.* BALTIMORE & OHIO RAILROAD COMPANY

[No. 120, October Term, 1954.]

*Decided April 15, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Herbert Myerberg,* with whom was *Erwin Ira Ulman,* on the brief, for appellant.

*John S. Stanley* and *Roger A. Clapp,* with whom were *Hershey, Donaldson, Williams* and *Stanley,* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was instituted in the Superior Court of Baltimore City by Herbert Kaplan, a resident of Baltimore, against the Baltimore and Ohio Railroad Company

to recover for his personal injuries resulting from a fall on the wooden stairway leading down to the Dolphin Street entrance of Mount Royal Station.

Plaintiff, a wholesale druggist, age 43, who had been commuting between Baltimore and Washington several days a week, testified that on the morning of March 4, 1953, one of his employees drove him to the railroad station to take the 9 o'clock train to Washington. About ten minutes before 9 o'clock he arrived at the "canopy entrance," as the Dolphin Street stairway was referred to in the Court below because of the roof over the stairway from the sidewalk down to the entrance. There is also a railing on each side of the stairway.

Plaintiff testified that he had not used this stairway very often, this being the first time he had used it in more than six months. It was a cold and rainy day. The wind had been driving the rain under the roof upon the steps.

There is a landing about half way down the stairway. Plaintiff walked down the first flight of steps to the landing without difficulty, and then started down the second flight. He slipped on the eighth step from the bottom of the stairway. He described his fall as follows: "The heel of my right foot got caught on something that was on the steps, and as I tried to put my left foot down, * * * this substance—this rock salt or these pebbles or whatever was there—just sent * * * both of my feet right out like I was on a pair of roller skates, and then I started to fly through the air." He fell backwards and rolled down two steps, and sustained some injury to his back.

Plaintiff complained (1) that the wooden treads had been worn down after years of use and as a result the iron bolts that held the treads in place projected above the wood; (2) that the edge of the tread was so worn away that it gave him no support when he put his left foot down; and (3) that rock salt or gravel had caused him to lose his balance.

On the contrary, employees of the railroad company testified that there were no bolts projecting above the

steps; that the steps were not worn down enough to make them dangerous; and that there was no rock salt or gravel on any of the steps.

At the conclusion of the testimony, the trial judge directed a verdict in favor of defendant on the ground of lack of legally sufficient evidence of defendant's negligence. From the judgment entered upon that verdict plaintiff appealed to this Court.

We are confronted at the outset with the question of the degree of care which a common carrier must exercise to provide safe station accommodations. Of course, a common carrier is required to use the utmost degree of care and skill in everything that concerns the safety of passengers. Moreover, the carrier's duty is not limited to the actual transportation of passengers. The carrier is also required to provide safe means of access to the trains. Accordingly, after a person has purchased his ticket and is waiting to board a train or is in the act of doing so, he is entitled to receive from the carrier the highest degree of care for his safety consistent with the mode of conveyance and its practical operation. *Dilley v. Baltimore Transit Co.*, 183 Md. 557, 39 A. 2d 469, 155 A. L. R. 627.

However, the carrier is required to provide only such station facilities as are reasonably necessary for the accommodation of its passengers, actual and prospective. While there are a few cases that hold a carrier to the exercise of the same high degree of care and skill in the maintenance of its stations as is imposed upon it in the operation of its trains, it has been held by the overwhelming weight of authority that a carrier owes a duty to all persons coming to its station, through its express or implied invitation, to exercise ordinary care to keep the station and the approaches thereto in a reasonably safe condition. *Davis v. South Side Elevated Railroad Co.*, 292 Ill. 378, 127 N. E. 66, 10 A. L. R. 254.

This generally accepted rule was adopted by this Court in *Jackson v. Hines, Director General of Railroads*, 137

Md. 621, 626, 113 A. 129, 131. In the opinion in that case Judge Offutt said:

> "The care which the carrier is required to exercise under such circumstances differs in degree from that which it is bound to exercise in the actual transportation of its passengers, and the obligation for its exercise arises from a different source. For while in the transportation of its passengers, the contract of transportation imposes upon the carrier the duty of exercising 'the utmost care and diligence which human foresight can use' to protect the passenger * * *, in the case of an invitee its duty is to use only ordinary and reasonable care for his protection, and that duty arises by implication as a matter of law."

It certainly cannot be said that a person is a passenger on a railroad before he enters the railroad station. Generally, the question whether a defendant is guilty of negligence in maintaining a dangerous place on his premises that causes injury to another depends upon whether such a place of danger is common and in the natural order of things or whether it is unusual in the experience of reasonably prudent persons. A person owes a duty to exercise ordinary care to maintain his business premises in a reasonably safe condition for the use of invitees.

This case is different from *Bennett v. Jordan Marsh Co.*, 216 Mass. 550, 104 N. E. 479. There the treads of the stairway were made of iron, and the edges of the treads were corrugated. Behind the corrugated portion the tread was countersunk and rubber was set in so as to be flush with the edge of the step. It appeared that the outer edge had been so worn down that the treads were smooth and slippery.

This case is also different from *Bohn v. Hudson & Manhattan R. Co.*, 30 N. J. Super. 89, 103 A. 2d 388. There the treads of the stairway were made of steel, and the treads had been covered with a casing containing an

abrasive material known as carborundum. It appeared that the nosing and a portion of the tread extending back from the face of it, upon which the pedestrian would normally place the ball of his foot, had become smooth and slippery.

We find nothing in the evidence in this case to show that the steps in the stairway were so worn as to permit an inference that the steps were dangerous. Each tread is made of three boards about eight feet long. The boards are held in place by iron bolts that go down through the board and are held by a nut underneath. The general foreman of the railroad company testified that the steps were constructed in accordance with the plans and specifications of the Building Code of Baltimore City. The station master testified that he could not recall any complaint that had ever been made about the steps. He also testified that while the steps were somewhat worn, they were "not worn down enough to be in what would be called a dangerous condition." Another employee, who had been handling traffic at Mount Royal Station for many years, and who assisted plaintiff after his fall, testified that he made an immediate examination of the steps from top to bottom and found "nothing wrong with the steps, only they were wet." He further testified that the steps were not slippery that morning, and then added: "The boards are rough and are never slippery."

Plaintiff urgently contended that there was a conflict of testimony. He suggested that the heel of his right shoe might have hit one of the bolts. But we find no substance in that claim. There was no evidence to support his claim that any bolt projected any appreciable distance above any step. The photographs introduced in evidence do not show any projecting bolt. One of the witnesses testified that after a careful examination he did not see a single protruding bolt in the entire stairway. Moreover, plaintiff admitted at the trial that he did not know what had caused him to lose his balance. He testified that the heel of his right shoe "got caught

on something." Again he admitted: "Well, I don't know what caught my heel, no, sir."

The employees of the railroad company testified that there was no rock salt or gravel on the steps that morning. They testified that rock salt was sometimes sprinkled on the steps in freezing weather when there was ice on the steps, but on that morning the temperature was above freezing, and there was no rock salt or gravel on the steps, and in fact no need for it on that day. But even assuming, as we must, that there was some rock salt or gravel on the steps, plaintiff could easily have seen it. Such material is often used as a precautionary measure to assist pedestrians, and its use would not necessarily constitute negligence.

In an action to recover damages alleged to have been caused by the negligence of the defendant, the burden is upon the plaintiff to prove (1) that there was a neglect of duty by the defendant, and (2) that the damages were the direct consequence of such neglect. It is entirely true that the trial judge, in considering whether there is any evidence legally sufficient to warrant a finding of negligence, must assume the truth of all the evidence and all inferences which may be naturally and legitimately deduced therefrom which tend to support the plaintiff's right to recover. But where the plaintiff has not shown by any evidence that the injuries sustained by him were a direct consequence of negligence on the part of the defendant, and there is no rational ground upon which a verdict for the plaintiff could be based, the trial judge should direct a verdict in favor of the defendant. *Barker v. Whittier*, 166 Md. 33, 170 A. 578; *Eisenhower v. Baltimore Transit Co.*, 190 Md. 528, 533, 59 A. 2d 313; *Washington Suburban Sanitary Commission v. Musgrove*, 203 Md. 231, 238, 100 A. 2d 27.

Finding no legally sufficient evidence that defendant was guilty of negligence, we will affirm the judgment entered upon the directed verdict.

*Judgment affirmed, with costs.*