SEAMAN et ux. v. STATE, use of JETER et al.

(Two Appeals in One Record)

[No. 180, October Term, 1956.]

360

*Decided May 13, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Max Sokol* and *Melvin J. Sykes,* with whom were *M. William Adelson* and *Eugene P. Smith* on the brief, for the appellants.

*Wallace Dann,* with whom were *Howard Calvert Bregel* and *Calvert Ross Bregel* on the brief, for the appellees.

PRESCOTT, J., delivered the opinion of the Court.

These are two appeals in two cases filed against Morris Seaman and his wife, appellants, for damages for the death of Arthur William Jeter on November 9, 1953, which resulted from injuries sustained in an accident that occurred on November 6, 1953. One case was filed for the use of Jeter's wife and minor daughter and the other by his administratrix. The two cases were consolidated and tried at the same time. At the conclusion of the appellees' case, the appellants filed a motion for a directed verdict, and a similar motion was filed when all of the evidence had been received. These motions were overruled, and the jury rendered verdicts in favor of the plaintiffs below in both cases. The appellants filed motions for judgment *n. o. v.* and for a new trial. The trial Judge granted the motions for a new trial unless the plaintiffs in both cases filed remittiturs by a certain date. The remittiturs were filed, and final judgments were entered against the appellants. It is from these judgments that these appeals were taken. As the same questions are involved in both appeals, they shall be treated as one, and the parties referred to as "appellants" and "appellees".

In determining the question of whether the trial Court ruled properly upon the appellants' motions for directed verdicts, all of the appellees' testimony must be assumed to be true, and the Court must draw such inferences as may naturally and legitimately be deduced therefrom which tend to support the appellees' rights of recovery. In other words, the evidence must be considered in the light most favorable to them.

The parties stipulated as follows:

> "1. That the premises known as 414 South Bond Street were, at the time of the accident mentioned in these proceedings, owned by Morris Seaman and Bessie Seaman, his wife, they being defendants herein.

> "2. That Arthur William Jeter, deceased, was a tenant of said property * * *, that he was the tenant of the second floor rear; that said premises are on the west side of Bond Street and that at the north side of said building there is an outside stairway giving access to the second floor; that said stairway constitutes sole access provided by the landlord for tenants and others to the second and third floors.

> "3. That the accident out of which these proceedings arise took place on November 6, 1953, about 6:30 P.M."

Minnie Williams, a witness called by the appellees, testified that she was a friend of Mrs. Jeter and had lived close by for several years; that she had visited the Jeters a few days before Mr. Jeter's fall; that the treads of the steps on the stairway had cream colored linoleum on them "all the way up"; that there was no roof over the steps, but there was one over the landing; that as she started down the steps, it was raining and she slipped on the linoleum; that she did not know whether the linoleum went all the way across (from side to side) the steps or not; and that the steps "wasn't fixed right".

Olie Miller, another witness called by the appellees, testified that he had lived at the same address as the Jeters for

two or three months before the accident; that on November 6, 1953, the treads of the steps were covered with linoleum that was "pretty worn"; that there was no roof over the steps, but there was one at the "top"; that there was linoleum at the "top of the landing"; that a couple of days after Mr. Jeter's death, the steps were all "cleaned off" and no covering over them after that; that he thereafter put a light at the top of the steps at Mr. Seaman's request; that the linoleum extended "all the way across" the steps and it was put down with tacks, but had no metal nosing on it; and that the linoleum was slippery when it was wet.

Mrs. Bolen, the sister of the last witness, was then offered by the appellees and stated that she had lived with her brother for about four days before Mr. Jeter's injury; that before the accident, there was linoleum on all of the steps and when damp it was slippery; that she did not think she would call what was there a "railing", but there was a "piece of board", and it was loose; that about November 2nd, she had ballerina slippers on and she went up about three of the steps and maybe because the steps were damp she "fell"; that there was no light on the stairs; that she could not "rightfully say" whether it was the slippers or the condition of the steps that caused her to fall; and that she "reported" this fall to Mr. Seaman. She did not elaborate on this statement, and made no mention of her stating to Mr. Seaman what had caused her to fall, or that the steps were slippery.

Ruth Thompson, a daughter of the deceased, who lived across the street from him, was the next witness on behalf of the appellees. She related to the Court and jury that she frequently visited her father; that there was linoleum on the steps and the railing was "awful shabby" and when "you touched it, it shook"; that she was pregnant and had difficulty "maneuvering on the stairs" because of their condition; that the steps had linoleum on them and the railing was "awful shaky" and there was no light on the stairway; that it was snowing and "slippery" on the day her father fell, and she fell down the steps on that same day.

At this point, the deposition of Jean Jeter, aged 17 years, another daughter of the deceased, was read into the record.

In it, she stated that it was raining and sleeting on the day her father was injured; and, that she had gone up and down the stairway several times that day and the "steps was real shaky".

The wife of the deceased, Lula Jeter, then took the stand, and testified that she had moved to the second story apartment about the last of August, 1953; that the outside steps had linoleum "all over the tops" of the treads, and the banister was "shaky"; that the linoleum was on the steps when she moved there; that on the day her husband was injured it began to snow in the "morning time" and it snowed practically all day and it was still snowing when she arrived home at about six o'clock in the evening; that her husband arrived home shortly thereafter and she was "looking out the door watching him come in"; that she "seen him coming up the steps" and "he got about halfway" and it "looked like his feet slipped out from under him and he started falling backwards" and she opened the door and bv the time she got to him "why he just . . ."; that her husband was carrying a package in his right arm and his left arm was "on this banister"; that her husband fell backwards and when she reached him, his head "had hit right into the concrete"; and, that her husband slipped from the fourth or fifth step to the "bottom or cement step at the bottom" and turned and fell backward against the stone wall.

From this evidence, the appellees argue that with respect to the stairway, the use of which was necessary to the safe use of the part leased, the landlord is responsible to a tenant for bodily harm under these circumstances: (1) That the injury arose out of a dangerous condition upon the part of the premises retained under the control of the landlord; (2) that the landlord could have discovered the condition and risk involved; and (3) that he could have made the condition safe. They further contend that it was unnecessary for them to prove that there was an unreasonable risk involved in the use of the stairway, but only a risk; that the jury may take into account, as a matter of common knowledge, that linoleum is slippery when wet; and that having fully met the

burden placed upon them, they are entitled to have the judgments affirmed.

It is incumbent upon one who sues another in tort to allege, and prove by a preponderance of the evidence, a duty owed by the defendant to the plaintiff, a breach of that obligation by the defendant, and damage to the plaintiff as a·result of the breach. The alleged negligence in this case is that snow was permitted to accumulate on the stairway due to the careless and negligent manner in which it was constructed and maintained, and that the treads on the steps were covered with linoleum instead of recognized non-skid tread coverings. It is well established in Maryland that when a landlord leases separate portions of the same building to different tenants, and reserves under his control certain portions of the building for the common use of all of the tenants, he is under an obligation to use reasonable diligence to keep the portions of the building so retained under his control in a reasonably safe condition. *Ross v. Belzer,* 199 Md. 187, 190, 85 A. 2d 799; *State, Use of, etc. v. Manor Real Estate & Tr, Co.* (4th C. A.), 176 F. 2d 414, 417. Cf. *McKenzie v. Egge,* 207 Md. 1, 7, 113 A. 2d 95; *2310 Madison Ave. v. Allied Bd. Mfg. Co.,* 209 Md. 399, 406, 121 A. 2d 203. Recognizing that there is *some* danger involved in numerous places in and about practically all business · premises, this Court has set forth what constitutes negligence in maintaining a dangerous condition on premises of this nature as follows:

> "Generally, the question whether a defendant is guilty of negligence in maintaining a dangerous place on his premises that causes injury to another depends upon whether such a place of danger is common and in the natural order of things or whether it is unusual in the experience of reasonably prudent persons. A person owes a duty to exercise ordinary care to maintain his business premises in a reasonably safe, condition for the use of invitees." *Kaplan v. B. & O. R. R. Co.,* 207 Md. 56, 60, 113 A. 2d 415.

With reference to the hand-rail, it will be noted that there

is no evidence that the hand-rail or its condition caused, or contributed in any manner, to Mr. Jeter's fall. The only testimony relating thereto is that he had his arm on the rail as he was ascending the steps. There is no claim that he was holding onto the rail and that it gave away, or that it was pulled from its fastenings. The railing not having caused, or contributed to, the injuries complained of, we need not consider it further, because, if it were not one of the proximate causes of the fall, its condition was immaterial.

An examination of the evidence will disclose that there was no serious effort made to establish the fact that the steps were of faulty construction (excepting for the linoleum and the fact that there was no roof over them, which will be considered later), or that the treads slanted or were unduly worn so as to present any unusual hazard. Such general adjectival descriptions as the steps "wasn't fixed right", that the linoleum was "pretty worn", and the "steps were real shaky" alone are insufficient to support an inference of negligence. *Jones v. Balto. Transit Co.,* 211 Md. 423, 428, 127 A. 2d 649.

This brings us to a consideration of the most important aspect of the case, namely, the linoleum coverings on the treads of the steps. We are unable to say that the placing of linoleum on the treads of an uncovered outside stairway consisting of a one-story flight of steps is evidence of negligence *per se*. The only evidence as to any dangerous situation created by the linoleum consisted of the statements by appellees' witnesses that it was "slippery when wet". We have already pointed out that such general adjectival descriptions alone do not support an inference of negligence. There was no attempt to show that the use of linoleum under similar circumstances was not a "common" one, or that it was "unusual in the experience of reasonably prudent persons." The evidence did not disclose the type, quality, category of surface or other features of linoleum; that it was loose, warped, torn or otherwise defective; or that linoleum is any more slippery when wet than any other substance in common use for outside stairways, such as bricks, marble, cement or terrazzo tile. Finally, there was no testimony,

expert or otherwise, that linoleum was an unusual or improper step covering for outside stairways, or that its use violated the Building Code of Baltimore City. There was, likewise, no testimony that the failure to cover an outside stairway one-story in height was uncommon or unusual.

Under these circumstances, we think it is clear that there was insufficient proof of an unreasonably dangerous condition to have taken the case to the jury. The general rule is well stated in 25 A. L. R. 2d at p. 426:

> "Although it seems clear that under proper circumstances a landlord constructing common stairs with materials known to be extremely slippery and dangerous to the user might be chargeable with negligence, the few cases involving allegations of negligence in this respect have resulted in verdicts for the defendant."

In all of the cases cited thereunder there were directed verdicts for the defendant. Cf. the following cases: *Kaplan v. B. & O. R. R. Co., supra; Ross v. Belzer, supra; Shramek v. Huff* (Neb.), 280 N. W. 450; *MacLachlan v. Perry* (Dist. of Col.), 68 F. 2d 769; *Dire v. Balaban and Katz, Inc.,* 241 Ill. App. 199; *Balastiere v. Lovecchio,* 24 N. Y. S. 2d 342; *Abbott v. Richmond Cty. Club,* 207 N. Y. S. 183; *Griggs v. Sears, Roebuck & Co.* (N. C.), 10 S. E. 2d 623.

There was no contention by the appellees in their brief, or in argument, that reasonable care did not permit the landlord to wait until the end of the snowstorm to clear the steps of the snow; so, at this time, we express no opinion concerning the obligation, if any, of a landlord, under the above circumstances, to remove the snow from the steps, either during or after the storm. See *Reuter v. Iowa Tr. & Sav. Bk.* (Iowa), 57 N. W. 2d 225.

As we hold that the appellants' motions for directed verdicts should have been granted, it is unnecessary to pass upon the other points raised in the appellants' brief.

> *Judgments reversed, with costs; judgments entered for the appellants for costs below.*