William J. HEWITT, Appellant,

v.

SAFEWAY STORES, INC., Appellee.

No. 20717.

United States Court of Appeals
District of Columbia Circuit.

Argued June 7, 1967.

Decided Feb. 6, 1968.

Mr. Joseph H. Koonz, Jr., Washington, D. C., with whom Messrs. Lee C. Ashcraft and Martin E. Gerel, Washington, D. C., were on the brief, for appellant.

Messrs. James A. Hourihan and Frank F. Roberson, Washington, D. C., for appellee.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

PER CURIAM:

On January 10, 1959, appellant was directed by his employer, the Atlantic Box & Basket Company, to go to Safeway's salvage warehouse at Landover, Maryland to pick up a truck load of empty egg crates. While placing these crates in his truck, appellant fell off the loading platform and was severely injured. He sued Safeway in the district court, alleging that his accident was caused by the unsafe working area provided by Safeway.

The district court directed a verdict against appellant, holding as a matter of (Maryland) law that since appellant admitted prior knowledge of the allegedly unsafe working area he assumed the risk of his injury. When asked by counsel, the district court conceded that appellant had only two alternatives: to assume the risk or quit his job. The question is whether the district court properly directed the verdict.

It is often difficult to ascertain the state of the law in another jurisdiction. In this case the difficulties are heightened by the fact that due to the adoption of Workmen's Compensation in 1914, there are few recent Maryland cases dealing with assumption of the risk in an employment context. We believe, however, that the direction of Maryland law points away from the directed verdict entered by the district court.

■■■■ 1. Under Maryland law, the employee of an independent contractor is owed the same duty of care as one's own employee. Le Vonas v. Acme Paper Board Co., 184 Md. 16, 40 A.2d 43 (1944). Thus, for purposes of this negligence suit, appellant must be considered an employee of Safeway.

The last Maryland holding on the point seems to be that where an employer has failed to provide a safe place to work, this carves out an exception to the doctrine that the employee assumed the risk. Frizzell v. Sullivan, 117 Md. 388, 390, 83 A. 651, 652 (1912). This decision seems to us to override the earlier contrary Maryland rulings[1] that it is assumption of risk that carves out an exception to liability for negligent failure to provide a safe place to work.

■■ The Frizzell doctrine is not inconsistent with the settled law that an employee cannot recover from his employer where the dangerousness of conditions at work is considered part of the normal hazards associated with hazardous employment.[2] It applies where a substantially new hazardous dimension, that cannot be avoided by the employee on the job, is added by the failure to take reasonable care in providing a safe place to work.

We have considered the authorities cited by appellee. Le Vonas v. Acme Paper Board Co., supra, is not meaningful on the assumption of risk since the holding was lack of negligence. A similar explanation disposes of Morrison v. Suburban Trust Co., 213 Md. 64, 130 A. 2d 915 (1957).

Finkelstein v. Vulcan Rail & Construction Co., 224 Md. 439, 168 A.2d 393 (1961), is a construction site case. The Maryland court has made clear that these are a separate category with higher hurdles confronting the injured employee.[3] Finkelstein itself points out

[1] E. g., Michael v. Stanley, 75 Md. 464, 23 A. 1094 (1892); Maryland D. & V. Ry. Co. v. Brown, 109 Md. 304, 71 A. 1005 (1908).

[2] State, Use of Eckhardt v. Lazaretto Guano Co., 90 Md. 177, 44 A. 1017 (1899); Wood v. Heiges, 83 Md. 257, 34 A. 872 (1896).

[3] We are aware that Frizzell also involved an injury at a construction site. But Frizzell was decided years before the Maryland courts evolved a special doctrine for construction sites, and there is no reason to believe it does not apply to non-construction cases today.

that the duty to provide a safe place to work has but "limited application" in cases involving "the erection and construction of buildings."

2. The Restatement (Second) of Agency § 523, comment b (1958) states that economic coercion does not preclude the defense of assumption of the risk. This, of course, is the traditional common law doctrine. But there is some indication that the Maryland Court of Appeals is moving away from that doctrine. In Burke v. Williams, 244 Md. 154, 158, 223 A.2d 187, 189 (1966), the court said:

> The appellant argues * * * that if he assumed the risk it was not voluntary in that the appellees provided him with only one means of ingress and egress to and from the house and that the economic necessity of keeping his job and not being discharged for failure to deliver the sink tops forced him to involuntarily assume the risk of crossing the slippery walkway. The contention is clearly without merit because there is no evidence that the owners of the house, or anyone else, ever demanded that the appellant use the walkway against his will. *Nor is there any evidence that his job would have been in jeopardy had he left the sink tops on the construction site instead of taking them into the house.* (Emphasis added.)

The implication of the italicized passage is that if there was evidence that appellant's job was in jeopardy this fact would have a bearing on whether he voluntarily assumed the risk. In the instant case, there was some evidence that plaintiff's job was in jeopardy. Indeed, the district court indicated that it was directing a verdict against appellant even assuming that his only alternative to working under the allegedly unsafe conditions was to quit.

3. In 1955 Maryland passed a law which provides that "Every employer shall furnish and maintain employment and a place of employment which shall be reasonably safe for employees." Md. Code art. 89, § 29. Section 29 is part of a comprehensive statutory scheme to protect workingmen. Sections 31–32 of art. 89 provide for a Safety Advisory Board to promulgate rules and regulations for "the prevention of accidents in every employment or place of employment." Any violation of these rules and regulations or of § 29 can be punished by a fine of up to $5,000 and a five-year jail sentence. Md. Code art. 89, § 43. Clearly this statutory scheme reinforces the *Frizzell* doctrine and the economic coercion argument by demonstrating that it is the policy of the state that workingmen be accorded added protection from unsafe working conditions.

Even more significant is the fact that many states have construed occupational safety statutes as abrogating the defense of assumption of the risk. (California and Connecticut courts have held that any safety statute, including automobile speed limits, abrogates the defense).[4] The Restatement of Torts (Second) § 496 F, comment d (1965) says that such a construction is particularly valid "where the purpose of the statute is found to be to protect a particular class of persons, in which the plaintiff is included, against their own inability to protect themselves. Thus * * * a factory act, requiring precautions to insure safe working conditions, may be found to be intended to protect workmen against the economic pressure which might force them into unsafe employment; and if so * * * the defense would not be permitted."

The Maryland courts have not yet ruled on the question of whether a violation of a safety statute precludes the defense of assumption of the risk. The decisions discussed above suggest they would rule that the defense is precluded. If violation of the statutory duty is excused by resort to an absolute defense of assumption of risk by employees, it leads to the result that the legislature did not impose a duty to provide a safe place to work, but only imposed a duty to advertise with

---

4. See Restatement (Second) of Torts § 496F, comments d and e (1965).

gross blatancy the fact that the employer had deliberately chosen to leave the working conditions unsafe. Whatever the courts may have ruled as to legislation passed in the 19th century, that result is unreasonable enough not to be presumed to have been intended by a legislature concerned with industrial safety in the 1950's.

■ We conclude that if plaintiff can prove unsafe working conditions the defense of assumption of the risk is barred as a matter of law. We therefore remand for a new trial on the issues of negligence, contributory negligence and damages.

SPOTTSWOOD W., ROBINSON, III, Circuit Judge (concurring in the result):

Like my colleagues, I have endeavored to ascertain the principles of Maryland law which control this litigation, and have encountered thorny problems along much of the way. While, in my view also, the District Court erred in directing a verdict for Safeway, our appellee, I arrive at that conclusion by a route quite different from that traveled by the court. What follow are the issues and the resolutions I think the Maryland guideposts develop.

I

A cause of action for negligence under the law of Maryland embraces the traditional elements of duty, breach of duty, and injury and damages consequent thereupon.[1] No more in Maryland than elsewhere does liability for negligence arise beyond a duty to protect the party injured.[2] So the starting point in this case, it seems to me, is an investigation as to the obligation Safeway owed appellant while he was loading the egg crates at its salvage warehouse.

Throughout its opinion, the court has treated appellant as Safeway's employee. Even legislation, applicable only to an "employer," requiring the furnishing and maintenance of "employment and a place of employment" reasonably safe "for employees," is deemed to have controlling significance.[3] On the hypothesis that the relationship between Safeway and appellant was one of employment, the court relies on Maryland authority in the master-servant field to support its ultimate holding "that if plaintiff can prove unsafe working conditions the defense of assumption of the risk is barred as a matter of law."[4] This analysis, basic to the court's exposition, is incorrect in my judgment.

When injured, appellant was employed and paid by Atlantic Box and Basket Company. He had been employed by Atlantic for about two years. His tasks included pickups at various warehouses on Atlantic's order. Describing them more broadly, appellant said, "I went to the warehouses and picked up orders for them; I delivered orders for them; and I did whatever they told me to do." It was Atlantic that, on the date he was hurt, instructed him to remove the load of egg crates from Safeway's warehouse, and Atlantic that furnished him with a helper. There is nothing to suggest that Safeway made the operation its own after Atlantic's truck arrived at Safeway's loading platform that day.

I am unable to discern any employment affinity between Safeway and appellant. That which did exist was between Atlan-

---

1. Seaman v. State to Use of Jeter, 213 Md. 359, 366, 131 A.2d 871, 874 (1957); State for Use of Chenoweth v. Baltimore Contracting Co., 177 Md. 1, 19, 6 A.2d 625, 633–634 (1939); Jackson v. Pennsylvania R.R. Co.. 176 Md. 1, 5, 3 A.2d 719, 721, 120 A.L.R. 1068 (1939); J. S. Young Co. v. State, 117 Md. 247, 252, 83 A. 345, 347 (1912).

2. Walter Brooks Bradley, Inc. v. N. H. Yates & Co., 218 Md. 263, 268, 146 A.2d

433, 436 (1958); Zamecki v. Hartford Accident & Indem. Co., 202 Md. 54, 60, 95 A.2d 302, 305 (1953); Pennsylvania R.R. Co. v. State, 188 Md. 646, 655, 53 A.2d 562, 566 (1947); State for Use of Chenoweth v. Baltimore Contracting Co., supra note 1, 177 Md. at 19, 6 A.2d at 633–634.

3. Supra p. 1249.

4. Supra p. 1250.

tic and appellant.[5] Although he was working on Safeway's premises, his labors were for Atlantic and not Safeway, and his present suit is against Safeway only. What we have, then, is an action by Atlantic's employee against Safeway, the possessor of land,[6] rather than Atlantic, the employer, for injuries sustained on Safeway's property in the discharge of the employee's responsibilities to the employer.

Atlantic had a business affiliation with Safeway.[7] Appellant, as Atlantic's employee, occupied the status of an invitee when on Safeway's premises for purposes related to that business.[8] The duties owed appellant by Safeway were those of the possessor of land to a business invitee thereon, and not those of an employer to an employee.[9]

## II

Maryland law as to the duties a possessor of land owes an invitee appears to conform to the general American law in that area.[10] The possessor is not an insurer of the invitee's safety.[11] His obligation is the exercise of reasonable care to keep the premises safe for invitees who come on it.[12] This includes a warning of any latent or concealed dangers on the property.[13] But ordinarily there is no liability to an invitee whose knowledge and appreciation of the

5. See Hilton Quarries v. Hall, 161 Md. 518, 526–527, 158 A. 19, 22 (1932), involving a fact situation similar to that here.

6. See Restatement (Second) of Torts § 328 E (1965).

7. Atlantic's business includes the retrieval and resale of containers. The evidence shows a long and continuing relationship with Safeway which embraced the pickup of salvageable receptacles.

8. See Le Vonas v. Acme Paper Board Co., 184 Md. 16, 40 A.2d 43 (1944); Clarke v. United States, 115 F.Supp. 14, 18 (D. Md.1953); Prosser, Torts § 61 at 395 (3d ed. 1964).

9. Of course, the landowner's duty under Maryland law to his business invitee may in particular instances be congruent with the employer's duty to his employee as respects, in each instance, the latter's safety. See Finkelstein v. Vulcan Rail & Const. Co., 224 Md. 439, 441, 168 A.2d 393, 394–395 (1961). There is close similarity to the extent that there is a duty to use care and the standard is reasonable care. But these elements—duty, on the one hand, and standard of care, on the other—are different and independent phenomena. Where there is a duty to use reasonable care, a failure to do so is, of course, a nonperformance of that duty. But where there is no duty to use care, a failure to exercise care is without legal significance simply because no duty was violated. And while, generally speaking, the landowner must use reasonable care to protect his business invitee, and the employer must observe the same standard in the protection of his employee, it does not follow that the landowner has a duty to do so in every situation in which the employer would have such a duty. In other words, the sameness of the standard of care where the duty of care exists does not mean that the duty will always exist for the one simply because it exists for the other.

10. See Restatement (Second) of Torts §§ 343, 343A (1965); Prosser, Torts § 61 (3d ed. 1964), and cases cited infra notes 11 to 15.

11. Hawkins v. Southern Maryland Agricultural Fair Ass'n, 237 Md. 90, 94, 205 A. 2d 286, 288 (1964); Elmar Gardens, Inc. v. Odell, 227 Md. 454, 457, 177 A.2d 263, 265 (1962); Velte v. Nichols, 211 Md. 353, 356, 127 A.2d 544, 546 (1957); Long v. Joestlein, 193 Md. 211, 216, 66 A.2d 407, 409 (1949); Potts v. Armour & Co., 183 Md. 483, 486, 39 A.2d 552, 555 (1944).

12. Elmar Gardens, Inc. v. Odell, supra note 11, 227 Md. at 457, 177 A.2d at 265; Finkelstein v. Vulcan Rail & Const. Co., supra note 9, 224 Md. at 442, 168 A.2d at 394; Morrison v. Suburban Trust Co., 213 Md. 64, 66, 130 A.2d 915, 916 (1957); Le Vonas v. Acme Paper Board Co., supra note 8, 184 Md. at 19, 40 A.2d at 45.

13. Safeway Stores, Inc. v. Bolton, 229 Md. 321, 326, 182 A.2d 828, 830 (1962); Nalee, Inc. v. Jacobs, 228 Md. 525, 529, 180 A.2d 677, 679 (1962); Evans v. Hot Shoppes, Inc., 223 Md. 235, 239, 164 A.2d 273, 276 (1960); Ludloff v. Hanson, 220 Md. 218, 223–224, 151 A.2d 753, 755 (1959).

danger equals the possessor's.[14] The latter "will not be held liable for injuries resulting from dangers which are obvious or familiar to the person injured as to him. It is only when there is some concealed peril, known to the owner but not known to the person injured, which he has failed to warn against, that he will be held responsible." [15]

The evidence at the trial was in conflict, but when viewed in the light most favorable to appellant,[16] it is quite clear that the conditions under which large pickups at Safeway's salvage warehouse were accomplished posed a substantial threat of a fall. The twelve-foot wide platform had to accommodate a great deal of bustle incidental to the loading and unloading of trucks which lined it. Safeway exercised full control over the activities thereon, and its foreman insisted that an aisle for the flow of traffic be kept clear at all times. This required appellant to function near the edge of the platform.

The bed of Atlantic's truck, which was backed up to the four-foot high platform, was about a foot below its surface. Pallets containing egg crates, in rows of five stacked six rows high, were successively brought by forklift from the warehouse and deposited close to the outside platform edge, directly behind the truck. The removal operation involved initially a sorting process in order to eliminate crates too poor in quality for retrieval.

14. Morrison v. Suburban Trust Co., *supra* note 12, 213 Md. at 68, 130 A.2d at 917; Bohlen v. Glenn L. Martin Co., 193 Md. 454, 460–461, 67 A.2d 251, 255 (1949); Le Vonas v. Acme Paper Board Co., *supra* note 8, 184 Md. at 20, 40 A.2d at 45; Yaniger v. Calvert Bldg. & Const. Co., 183 Md. 285, 288, 37 A.2d 263, 264–265 (1944); Gordon v. Maryland State Fair, 174 Md. 466, 469, 199 A. 519, 521 (1938).

The principle has been stated not only in terms of an absence of duty, see Finkelstein v. Vulcan Rail & Const. Co., *supra* note 9, 224 Md. at 441–442, 168 A.2d at 394–395; Evans v. Hot Shoppes, Inc., *supra* note 13, 223 Md. at 239–241, 164 A. 2d at 276–277; Morrison v. Suburban Trust Co., *supra* note 12, 213 Md. at 66–69, 130 A.2d at 916–917, but also in terms of assumption of risk, see Burke v. Williams, 244 Md. 154, 157–158, 223 A.2d 187, 189 (1966); Velte v. Nichols, *supra* note 11, 211 Md. at 356, 127 A.2d at 546; Bull S.S. Lines v. Fisher, 196 Md. 519, 526–527, 77 A.2d 142, 145–147 (1950), and contributory negligence, see Craig v. Greenbelt Consumer Serv., 244 Md. 95, 97–98, 222 A.2d 836, 837–838 (1966); Eyler v. Adolph Beauty System, 238 Md. 227, 229–230, 208 A.2d 609, 610–611 (1965); McManamon v. High's Dairy Products Corp., 230 Md. 370, 372, 187 A. 2d 318, 319 (1963).

15. Le Vonas v. Acme Paper Board Co., *supra* note 8, 184 Md. at 20, 40 A.2d at 45.

"It is a familiar principle of law that mere ownership of land or buildings does not render one liable for injuries sustained by persons who have entered therein, as the owner is not an insurer of the safety of such persons, even though he has invited them to enter. A property owner's liability to an invitee for injuries not intentionally inflicted must be predicated upon negligence, and there is no presumption of negligence on the part of an owner merely upon a showing that an injury has been sustained by a person while rightfully upon the premises. The general rule is well settled that an owner of land or buildings, who invites employees or others to go upon his premises, owes to such persons a duty to exercise care to have his premises in a reasonably safe condition and to give warning of any latent or concealed dangers. If an owner or occupant negligently allows a dangerous condition to exist on his premises, and leads invitees into a dangerous trap or exposes them to an unreasonable risk, and fails to give them warning of latent or concealed dangers, which are known to him but not to them, he is liable in damages to any injured persons, if they used ordinary care. But there is no duty upon the owner or occupant to warn an invitee of a dangerous condition which is obvious to a person of ordinary care and prudence." Long v. Joestlein, *supra* note 11, 193 Md. at 215–216, 66 A.2d at 409.

16. See Machanic v. Storey, 115 U.S.App. D.C. 87, 90, 317 F.2d 151, 154 (1963); Furr v. Herzmark, 92 U.S.App.D.C. 350, 353, 206 F.2d 468, 471 (1953); Peigh v. Baltimore & O. R.R. Co., 92 U.S.App.D. C. 198, 199, 204 F.2d 391, 392, 44 A.L.R. 2d 671 (1953); Higashi v. Shifflet, 90 U.S.App.D.C. 302, 195 F.2d 784 (1952).

In the beginning, this was done on the truck bed, onto which the crates were shoved, but when the truck became about half-filled, the sorting had to be done on the platform and the salvaged crates then taken inside the truck. The area between the pallets and the platform edge available for this purpose was only about a foot wide. While attempting to carry two crates into the truck, appellant somehow fell off the edge of the platform.[17] As the District Judge stated before directing the verdict, the evidence would have upheld a finding that negligence on Safeway's part contributed to the fall.

At the same time, it plainly appeared that the hazard associated with loading at this platform was not only open and obvious, but also was well known to and understood by appellant. He had made numerous trips—estimated at perhaps a hundred or more—for Atlantic to the warehouse, always using the same platform and encountering the same or similar conditions. "It was always cluttered up," appellant said. "You always had a

mess there. It didn't matter what day you went there," and to him "it always was dangerous." Indeed, he had fallen off the platform once before, and had seen several others jump therefrom to avoid the movements thereon. Were there not more to the case, the conclusion would seem unavoidable that Safeway was not liable to appellant, not necessarily because he had assumed the risk of injury, but because Safeway's duty did not extend to protection against conditions so familiar to appellant.[18]

### III

The exemption from liability for injury caused by conspicuous hazards which is generally accorded the possessor of land rests upon the invitee's normal opportunity to decide for himself whether he will enter under such conditions, and his usual ability to protect himself in the event that he does.[19] It is evident, however, that situations will arise in which these capabilities do not exist.[20] An increasing body of authority supports the

---

**17.** Appellant testified that vision was sometimes obscured by the crates being carried. It is not clear whether such was the case just before he fell.

**18.** See cases cited *supra* notes 14 and 15.

**19.** "In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them." Restatement (Second) of Torts § 343A, comment *e* (1965).

**20.** "There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition of activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

"Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or

proposition that the possessor remains liable where he might reasonably have anticipated injury to the invitee notwithstanding the circumstance that the peril was there to be seen.[21]

Maryland cases have evinced robust tendencies in the same direction where a fact dulling the invitee's sensitivity to the danger has appeared. Abnormality of the risk,[22] diversion of attention to other attractions,[23] and calculated but plausible exposure to jeopardy[24] have been recognized as foreseeable deterrents to the invitee's avoidance of harm on his own. Absent a positive indication to the contrary, and I have discovered none, these decisional omens suggest satisfactorily to me that a state so consistently an adherent to current American doctrine in the negligence field would hardly reject a principle already so widespreadly accepted by judges and other scholars alike.[25] Thus I think the jury should have been permitted to inquire as to whether Safeway had reason to contemplate appellant's possible tumble from the platform despite his own cognizance of that contingency.

There was ample evidence to warrant a verdict predicated on Safeway's awareness of appellant's dilemma on the occasion in question. He had often loaded Atlantic's truck from the same platform. This circumstance, and other testimony as well, indicate that appellant was known to Safeway's employees as a frequent user of the platform. Besides, appellant reported his mission to the warehouse foreman upon his arrival on the day he was injured. Safeway's foreman also saw appellant working on the platform, both before and at the very moment of his fall, and appellant testified that "[t]hey all knew" what the situation was.

Moreover, the evidence would have justified the conclusion that Safeway might have foreglimpsed appellant's fall from the platform in spite of the obviousness of the peril. It indicated that the working space Safeway provided appellant at the platform's edge was inadequate to allow him any alternative by which, without flirting with the danger of plunging over the edge, he could proceed with the operation Safeway knew he had come to perform. For not only did this operation entail a grading of the egg crates but also, in its later stages, the carrying into the truck of those which were to be reclaimed. As appellant explained, "you had to watch that walk; you had to watch the step off the platform and you had to watch the crates on the pallet and you had to watch the side of your truck." It seems clear that the jury might have found reason for Safeway to anticipate not only that appellant would venture nonetheless to load the truck, as he had done so many times before, but also to envision his possible injury in the process despite a recognition of the hazard inherent in the undertaking. In my view, another jury should be afforded the opportunity to consider whether it is inclined to make such a finding.

assumption of risk. * * * It is not, however, conclusive in determining the duty of the possessor, or whether he acted reasonably under the circumstances." Restatement (Second) of Torts § 343 A, comment f (1965).

21. See the numerous cases collected in the reporter's notes to Restatement (Second) of Torts § 343 A, comment f (1965), app. at 234–235 (1966). See also Prosser, Torts § 61 at 404 (3d ed. 1964).

22. See Burkert v. Smith, 201 Md. 452, 94 A.2d 460 (1952); Recreation Centre Corp. v. Zimmerman, 172 Md. 309, 313, 191 A. 233, 234 (1937).

23. See Ludloff v. Hanson, supra note 13; Burkert v. Smith, supra note 22. See also Chalmers v. Great Atlantic & Pacific Tea Co., 172 Md. 552, 558, 192 A. 419, 422 (1937).

24. See Raff v. Acme Markets, Inc., 247 Md. 591, 233 A.2d 786, 788 (1967). Compare Gast, Inc. v. Kitchner, 247 Md. 677, 234 A.2d 127, 131 (1967); Honolulu Lt'd v. Cain, 244 Md. 590, 596–597, 224 A.2d 433, 436 (1966).

25. See notes 19 to 21, supra.

## IV

The verdict in Safeway's favor was directed on the ground that, as a matter of Maryland law, appellant had assumed the risk of his fall. On the analysis discussed, however, I would consider the doctrine of voluntary assumption of risk inapplicable [26] in the event that appellant's version of the facts should win a jury's approval. By that version, Safeway restricted his activities to a small space close to the edge of the platform. In consequence, by the view I entertain, Safeway projected its liability beyond his own cognizance of the danger. And appellant either had to load the truck under the conditions imposed or not load it at all. One's acceptance of a risk of harm created by another's nonperformance of duty does not represent a free choice where there is no feasible alternative save to sacrifice an interest which the duty exists ultimately to subserve.[27]

There are persuasive indicia that this principle inheres in Maryland law. It has been incorporated into judicial opinions,[28] and has found specific operation in rescue cases.[29] Quite significantly, it has enjoyed clear recognition in the master-servant relationship, where the assumption doctrine reached its zenith. In *Frizzell v. Sullivan*,[30] the court declared that "the doctrine of the assumption of risk can never be invoked until after it is shown that the master has performed his full duty towards the servant by supplying him a place reasonably safe in which to perform his work, or with tools and machinery proper and suitable in their character for the work to be performed, taking into consideration the work to be done." [31] So far as I am able to determine, *Frizzell* remains, with undiminished vitality, a part of Maryland law.

Nothing I have seen engenders a belief that the Maryland courts would show any less solicitude for an invitee called to perform work on commercial premises. On the contrary, the indications are that the implications of *Frizzell* would be equally positive in a case like that at

26. The observations in pt. IV are addressed solely to assumption of risk as a defense to appellant's suit. I agree with the court that in any event appellant's contributory negligence, as well as Safeway's primary negligence, are potential issues upon a retrial.

27. See Restatement of Torts (Second) § 496 E, comment c (1965); Prosser, Torts § 67 at 467–468 (3d ed. 1964). To relieve against an assumption of risk, the principle has been applied in favor of invitees, see Williamson v. Derry Elec. Co., 89 N.H. 216, 196 A. 265, 266–267 (1938); see also King Soopers, Inc. v. Mitchell, 140 Colo. 119, 342 P.2d 1006, 1010 (1959); Morris v. Atlantic & Pacific Tea Co., 384 Pa. 464, 121 A.2d 135, 138–140 (1956), as well as those occupying some other status on the land. See Foster v. A. P. Jacobs & Associates, 85 Cal.App.2d 746, 193 P.2d 971, 974–978 (1948) (employee of tenant); Milburn v. Knights of Columbus Home Ass'n, 167 Pa.Super. 509, 76 A.2d 466, 468–469 (1950) (social guest of occupant's employee); Seelbach, Inc., v. Mellman, 293 Ky. 790, 170 S.W.2d 18, 19 (1943) (employee of tenant). See

also Hoss v. Nestor Bldg. & Loan Ass'n, 164 Pa.Super. 77, 63 A.2d 435 (1949) (guest of tenant).

28. The exception to the assumption doctrine stated in Restatement of Torts § 893 (1939), "where the other's conduct constitutes a breach of duty to him or to a third person and has created a situation in which it is reasonably necessary to undergo a risk in order to protect a right or avert a harm," has been quoted or cited in the Maryland decisions. See, e. g., Scott v. John H. Hampshire, Inc., 246 Md. 171, 227 A.2d 751, 752 (1967); Williamson Truck Lines v. Benjamin, 244 Md. 1, 13–14, 222 A.2d 375, 382 (1966); Peoples Drug Stores, Inc., v. Windham, 178 Md. 172, 186, 12 A.2d 532, 539 (1940).

29. Scott v. John H. Hampshire, Inc. and Peoples Drug Stores, Inc., v. Windham, both *supra* note 28.

30. 117 Md. 388, 83 A. 651 (1912).

31. 117 Md. at 390, 83 A. at 652. Maryland's workmen's compensation law abrogates assumption of risk as a defense. Md.Code art. 101, § 15 (1964).

bar. In Burke v. Williams,[32] where a deliveryman fell from an obviously slippery walkway while carrying sink tops into a house under construction, the court responded to his contention that any assumption of the risk was involuntary by pointing out that the evidence failed to show either that he had been directed to use the walkway or that the sink tops could not have been left outside the house. The inference is fair that if the deliveryman's orders had been to take them inside, and use of the walkway was essential to doing so, the outcome of the litigation might have been different.[33]

To this I would add a holding by the Fourth Circuit, in an application of Maryland law, that tenants remaining in premises the common cellars in which were known to be infested by rats did not assume the risk of typhus infection.[34] The tenants faced difficulties in relocating, the court said, and "were entitled to exercise the right of occupancy conferred by their lease and to demand that the landlord perform the duty of keeping the reserved portion of the premises in safe condition for their use. Under these circumstances, there was no assumption of the risk on their part." [35]

Very recently, the Court of Appeals of Maryland proclaimed that "[t]he plaintiff takes a risk *voluntarily* * * * where the defendant has a right to face him with the dilemma of 'take it or leave it'—in other words, where defendant is under no duty to make the conditions of their association any safer than they appear to be." [36] That was not the situation here. Safeway, having appellant as an invitee on its premises, owed him an obligation of protection so long as the business purposes of the visit were being served. According to the evidence he presented, his sole alternative to gam-

bling with his safety near the edge of the platform was to forego the business that brought him there. In the circumstances portrayed by his evidence, I think Safeway cannot be heard to say that he assumed the very risk to negate which Maryland law imposed on Safeway a duty of reasonable conduct.

---

32. *Supra* note 14, discussed by the court *supra* p. 1249.

33. *Burke* was later characterized by the statement that "the plaintiff [there] had intentionally and voluntarily exposed himself to a known danger." Gibson v. Beaver, 245 Md. 418, 226 A.2d 273, 276 (1967).

34. State of Maryland for Use of Pumphrey v. Manor Real Estate & Trust Co., 176 F.2d 414 (4th Cir. 1949).

35. 176 F.2d at 418–419.

36. Gibson v. Beaver, *supra* note 33, 226 A.2d at 276, quoting Harper & James, Torts § 21.3 at 1174 (1956). (Emphasis in the original.)