LAWRENCE *v.* CAVANAUGH, ET UX.

[No. 122, September Term, 1967.]

*Decided March 6, 1968.*

*Motion for partial rehearing and for modification filed April 4, 1968; denied April 5, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, BARNES, McWILLIAMS and FINAN, JJ.

*R. Edwin Brown* and *Francis N. Iglehart,* with whom were
*Brune, Robertson & Iglehart* on the brief, for appellant.

*James F. Couch, Jr.,* with whom were *Couch, Blackwell &
Miller* on the brief, for appellees.

MARBURY, J., delivered the opinion of the Court.

Prior to his accident on February 20, 1965, the appellant,
James D. Lawrence, had been employed by the appellees David
T. Cavanaugh and Elizabeth Cavanaugh, husband and wife, for
a period of almost two years. Before his employment on the
Cavanaugh farm he had worked as a dairyman for fourteen
years on another Montgomery County dairy farm and actually
had spent substantially all of his working life on a farm.

In 1960, the Cavanaughs, who had owned the farm since 1940,
shifted from general stock farming to a dairy operation. Sub-
sequently, they built a herringbone type milking parlor, with
six milking stalls and a dairy room which housed the machinery
for handling and processing the milk. Above the stalls and dairy
room was a loft where feed was stored and from which the
feed was distributed to the cows below through vertical pipes
leading to individual feed cups. Although the bulk feed was
originally supposed to be distributed somewhat automatically,
it developed that it was necessary for someone to climb into
the loft and to distribute the feed over the pipes by hand at
each feeding. In addition, there was a motor installed in the
loft for the purpose of operating the apparatus that was used
to blow the bulk feed into the loft. The only access to the loft
was by a door on the outside of a gable end of the building.
This door was situated some ten feet above ground level and
was reached by climbing a movable wooden ladder that was

leaned against the side of the building, and reached within a few inches of the bottom of the door. The door, which opened outward, was hinged on the left side and there was testimony to the effect that it was somewhat difficult to open while standing on the ladder. There was also testimony that this was an unusual arrangement for reaching the loft area of a milking parlor, access usually being attained by a stationary ladder or stairs, frequently located inside the building.

During the winter months it was necessary to negotiate the ladder in darkness and there was evidence that the area was inadequately lighted. On the morning of the accident, the appellant, clad in heavy clothing and four-buckle arctics, climbed the ladder and, after spreading the feed as he was required to do, began his descent from the loft. A high wind was blowing. As Mr. Lawrence reached over and slammed the door he slipped and fell through the ladder causing four of the wooden rungs to break, resulting in the rupture of a disc in his lower spine. After a period of recovery Mr. Lawrence obtained employment as a janitor. At trial there was testimony that he had sustained a 15-20% disability as a result of the accident.

This action for damages was brought in the Circuit Court for Montgomery County where it was tried by a jury which resulted in a verdict for the appellant in the amount of $50,000. Subsequently the appellees moved for judgment n.o.v. This motion was granted by Judge Moore on the ground that as a matter of law the appellant had assumed the risk of injury in continuing to act as he did in using the ladder. From the granting of that motion and the entry of judgment in favor of the appellees for costs, this appeal followed.

The appellant argued that the defense of assumption of risk is not available to an employer who has failed to provide a safe place for his employees to pursue their duties. In support of this he cited *Frizzell v. Sullivan*, 117 Md. 388, 83 Atl. 651. In that case, however, the employee could not be said to have voluntarily assumed the particular risk that caused his injury since there was nothing to show that he knew that the defect even existed, while there was evidence that the employer or his agent knew or should have known of the serious defect.

It is true, as the appellant pointed out, that Code (1957), Article 89, Section 29, does place a duty on employers to furnish a safe place of employment. But the statute alone does not, by its terms, provide a remedy to an employee who finds his working conditions unsafe and neither do its terms abrogate the defense of assumption of risk if an employer fails in his duty to furnish a safe place in which to work.

In ruling that Lawrence had as a matter of law assumed the risk of injury to himself, the trial judge had the following facts on which to base his decision. Mr. Lawrence was an experienced farm worker, accustomed to conditions ordinarily encountered around dairy barns. He knew of the condition that existed with respect to the movable ladder used for access to the loft and the dangers attendant upon using this ladder. In spite of this knowledge he continued to use the ladder for a period of almost two years and, as computed by Judge Moore, went up and down the ladder as many as two thousand times.

The record before us indicates that the appellant soon after beginning his employment and on numerous occasions thereafter complained to Mr. Cavanaugh about the danger of having to use the ladder as a means of access to the loft door and that Mr. Cavanaugh in turn indicated to him that he would have an outside flight of steps built to the door so that the use of the ladder would no longer be required. The series of Lawrence's complaints and Cavanaugh's promises to correct the dangerous condition caused by having to use the ladder continued until November 1964. The record also shows that Lawrence complained to John William Bradley, who had been engaged by Mr. Cavanaugh in the capacity of a working manager with authority superior to Lawrence, about the danger of having to use the ladder.

In the meantime, in July 1964 Lawrence notified Mr. Cavanaugh that he intended to teminate his employment because he was getting along in years and wished to engage in a different type of work. Mr. Cavanaugh persuaded him to continue on until his replacement could be made. The necessity for replacement apparently resulted in the employment of Bradley. At the time of the accident on February 20, 1965, Lawrence had notified Mr. Cavanaugh shortly after the first of the year that he

would leave his employment and move on March 1. The record does not show that Mr. Lawrence gave as a reason for terminating his employment the dangerous condition involving the ladder.

It thus appears that for the period of almost two years Lawrence had complained about using the ladder, had been promised that the dangerous condition would be corrected and that nothing had been done by Cavanaugh, yet Lawrence continued to use the ladder which he considered to be dangerous, thus assuming the risk of its use in conjunction with his employment.

Although the appellant cites cases for the proposition that the defense of assumption of risk is negated when an employer is apprised that a dangerous condition exists and the employer promises to remedy the situation, this rule does not govern where the circumstances are such that an employee can not be said to have reasonably relied on the promise being carried out. Restatement (Second), *Agency*, Section 522; 56 C.J.S., *Master and Servant*, Section 396 (f); 35 Am. Jur., *Master and Servant*, Section 318; and cases cited therein. As our predecessors said in *Md. Steel Co. v. Engleman*, 101 Md. 661, 684, 61 Atl. 314:

> "In *Hough v. Texas & Pacific R.R.*, 100 U. S. 213, the Court quoted with approval the following passage from *Shearman and Redfield on Negligence*: 'There can be no doubt that where a master has expressly promised to repair a defect, the servant can recover for an injury caused thereby, within such a period of time after the promise as it would be reasonable to allow for its performance, and as we think for an injury suffered within any period which would not preclude all reasonable expectation that the promise would not be kept.' The same authors say in sec. 215 of the 4th ed: 'If a servant gives notice to his master of a defect in machinery or appliances which he is required to use, and the master promises to remedy the defect within a reasonable time, the master will be liable for injuries resulting to the servant from such defect, and the servant will not be chargeable with con-

tributory negligence in continuing in the service for such reasonable time, unless the danger is so great that a man of ordinary prudence would not remain in the service under the circumstances.' "

While the quotation above concerned itself with the defense of contributory negligence of a servant we think it is equally apposite to a situation where the defense of assumption of risk is involved. In the present case the appellant became aware of the dangerous condition at the outset of his employment and complained about it to his employer who promised to remedy the condition. While he was justified in relying on this promise for a reasonable period of time he could not rely on it indefinitely and when the first promise and subsequent promises were not kept, a reasonable man could no longer be said to have justifiably relied on the condition being remedied after an approximately two year period of inaction.

Assuming the truth of all the evidence favorable to the appellant together with all inferences that might reasonably be drawn therefrom, as we have done, the lower court was justified in granting a judgment n.o.v.

*Judgment affirmed, with costs.*