## MARDO HOMES, INC. *v.* COMMISSIONER OF LABOR AND INDUSTRY

[No. 558, September Term, 1976.]

*Decided March 11, 1977.*

The cause was argued before MORTON, MENCHINE and MASON, JJ.

*Thomas N. Biddison, Jr.*, with whom were *Gallagher, Evelius & Jones* on the brief, for appellant.

*Walter Timothy Seidel, Assistant Attorney General*, with whom was *Francis B. Burch, Attorney General*, on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

On October 16, 1975, three employees of Mardo Homes, Inc. (employer) were instructed to clean the leaves from rainspouts in one of its townhouse rental developments. The employer provided its employees with an aluminum

extension ladder consisting of two fifteen foot sections, without a pulley leader, for use in the work. In the absence of a pulley leader, it was necessary to carry the ladder by hand to the scene of the work and make the section assemblage at that point. Upon assembly, the workmen placed it on the ground at a 90° angle facing the townhouses and after rotating the ladder, raised it to a vertical position, and moved it toward the roof of the building. In the course of that movement the extended metal ladder came in contact with uninsulated electric wires carrying 7600 volts. One employee was killed, and a second severely injured. The uninjured third employee had released his hold upon the ladder an instant before contact was made with the charged wires. The wires in question, consisting of three strands running parallel to the building, were approximately at rooftop level, approximately 16 feet from the ground, and separated from the building by about 15 feet.

On October 28, 1975, the assistant commissioner for occupational safety and health issued a citation[1] to employer, alleging that it had violated the Maryland Occupational Safety and Health Act of 1973, codified as Maryland Code Article 89, §§ 28-49A (MOSHA). MOSHA is substantially similar to and interconnected with the Federal Ocupational Safety and Health Act (OSHA), 29 U.S.C. 651, *et seq.* as was clearly and succinctly pointed out in *J. I. Hass Co. v. Dept. of Lic. and Reg.*, 275 Md. 321, 340 A. 2d 255 (1975), at 327-28 [259]:

> "The Maryland Occupational Safety and Health Law, Art. 89, §§ 28-49B, was enacted as Chapter 59 of the Laws of 1973, effective July 1 of that year. It is substantially similar to the Federal Act. It vests in the Commissioner of Labor and Industry 'the power and authority to administer and enforce the provisions of this subtitle and [the duty to] prescribe such rules and regulations as he may deem necessary to carry out his responsibilities

1. Authorized by Article 89, § 36.

under this subtitle.' Art. 89, § 30. Essentially, it tracks the Federal Act in providing for the promulgation of occupational safety and health standards, and in fixing the duties of the employers and employees, and in establishing citation and enforcement procedures. Additionally, the State Act adopts the same civil penalties that are specified in the Federal Act. With particular reference to the standards, § 31 (c) of the State Act provides that: '. . . [T]he Board shall recommend or propose occupational safety and health standards which are or will be at least as effective in providing safe and healthful employment and places of employment as any standard promulgated under the federal Occupation Safety and Health Act of 1970. . . .'

"Having met the applicable federal requirements, the State Act received the approval of the Secretary of Labor on July 5, 1973. 38 Fed. Reg. 17834. Thereafter, the Commissioner, acting on the recommendation of the Occupational Safety and Health Advisory Board created pursuant to § 31 (a) of the State Act, adopted as standards under the state plan the general industry standards (29 C.F.R. § 1910) and the construction standards (29 C.F.R. § 1926) promulgated by the Secretary of Labor under the Federal Act."

The citation charged that employer violated general industry standard 29 C.F.R. 1910.26(c)(3)(viii), incorporated into the State plan, and reading as follows:

"§ 1910.26  Portable Metal Ladders

   (c)  Care and Maintenance of ladders

* * *

   (3)  Use of ladders

* * *

      (viii) Users are cautioned to take proper safety measures when metal

ladders are used in areas containing electric circuits to prevent short circuits or electrical shock."

The citation contained the following description of the alleged violation:

"Employer/Employees did not take proper safety measures when using a 30 ft. metal ladder near 7600 volt electric line at the following location:

a) 5000 block of Carmine Avenue, 3 employees exposed."

and recommended that employer be declared in "serious violation" and be subjected to a penalty of $330.00.[2]

On December 1, 1975, a hearing was had before a hearing examiner appointed by the Commissioner of Labor and Industry.[3]

On March 16, 1976, the hearing officer made the following determination:

"1. That in Case No. J1370-009-76, the Citation for a violation of Maryland Occupational Safety and Health Standard 29 CFR 1910.26 (c) (3) (viii) issued against the 'Employer', Mardo Homes, Inc., is herewith affirmed.

2. That the violation of the Standard was a 'Serious' violation.

3. That the proposed penalty of $330.00 for violation of the foregoing standard is herewith affirmed."

Employer requested a review by the Commissioner of Labor and Industry.[4]

On March 30, 1976, the Commissioner, on the basis of a review of the record made before the hearing examiner,[5] passed an order affirming the latter's determination.

2. Acting pursuant to Article 89, § 37 (a).
3. Authorized by Article 89, § 37 (d).
4. Authorized by Article 89, § 37 (d).
5. Authorized by Article 89, § 37 (e).

Employer, aggrieved by the order of the Commissioner, appealed to the Baltimore City Court.[6] That court affirmed the order of the Commissioner.

Employer now has appealed to this Court asking:

"1. Was the providing of an aluminum ladder by Mardo Homes, Inc., to its employees, without a specific warning not to touch an unobstructed high tension wire, a violation of 29 CFR 1910.26 (c) (3) (viii)?"

We think the question posed by appellant too narrowly restricts the meaning and purpose of the cited standard and too narrowly limits the duty imposed upon employers by other provisions of MOSHA.[7]

Article 89, § 32 reads as follows:

*"Duties of employers and employees.*

(a) Each employer shall (1) *furnish to each of his employees employment and a place of employment which are safe and healthful as well as free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees, and (2) comply with the rules, regulations, standards and orders promulgated under this subtitle.*

(b) Each employee shall comply with the provisions of this subtitle and all rules, regulations, standards and orders issued pursuant to the authority of this subtitle which are applicable to his own actions and conduct in the course of his employment.

(c) Each employer shall, through posting of notices at the place or places where notices to employees are normally posted or other appropriate means keep his employees informed of their

6. Authorized by Article 89, § 38 (a).

7. See declaration of legislative intent and purpose incorporated within MOSHA by § 28 of that Act.

protections and obligations under this subtitle, including provisions of applicable standards." (Emphasis added.)

### Additional Evidence

The descriptive facts of the incident causing death and injury hereinbefore recited are not in dispute. In addition to those facts, other significant evidence before the hearing examiner bore upon the issue whether the employer breached a statutory duty. In summary, there was testimony that the workmen did not know that uninsulated electrically charged wires existed at the point where the unfortunate accident occurred but were "totally unaware of the three electric wires running the full length of the houses because they were hidden by autumn leaves"; that employer's general manager, although declaring that he "informed the men that cleaning should be done in the rear of the building away from the line," [8] acknowledged that there were "[no] specific instructions given to avoid these particular wires" or to indicate the fact of their existence at the point where the work was to be undertaken.

Such a limited warning, directed as it was to a part of the building complex other than the accident site, reasonably implied that the area wherein the workmen were assigned to work was free of hazards incident to the use of a metal ladder. The tragic event proved otherwise.

The lines in question had been installed at the sixteen foot level in this development when the buildings were constructed and "[In m]ost of [employer's] apartment developments the lines are usually thirty feet above the ground and nothing as low as I found this wire to be."

The hearing examiner reached the following conclusions from the evidence presented before him:

"The employees engaged in raising the ladder included the Assistant Supervisor of the

---

8. A reference to another electrically charged line in a different part of the complex.

development and the Superintendent of Maintenance, both of whom, are by their positions, the 'Employer's' representatives; and their activities and knowledge within the scope of their employment are the activities and knowledge of the 'Employer.'

"In examining the actions and knowledge of the 'Employer', we find that he knew, or should have known, that there were wires near the building and also that he knew, or should have known, that a metal ladder coming into contact with the wire could cause an electrical charge to be drawn down the ladder to the ground.

"The 'Employer' provided his employees with an aluminum ladder without a pulley and rope for extending it to a raised position, thus making it necessary to extend the ladder before raising it.

"While the wires may have been partially obstructed by foliage, the pictures taken by the Inspector at the location where the accident is alleged to have happened, clearly shows the wires without any type of foliage hiding them.

"From the evidence in this case, it is clear that the 'Employer' violated the standard as cited."

Judge Levine, speaking for the Court of Appeals in *Hass, supra,* pointed out that: "Since the Maryland Act is patterned on the Federal Act . . . we look to the federal cases for guidance." 275 Md. at 330, 340 A. 2d 260. We shall do likewise.

The nature of the general duty imposed upon employers under OSHA was briefly but cogently stated in *Brennan v Butler Lime and Cement Company,* 520 F. 2d 1011 (7th Ci 1975), wherein it was said at 1017:

"An employer must take reasonable precautionary steps to protect its employees from reasonably foreseeable recognized dangers that are causing or are likely to cause death or serious physical injury. And precautionary steps, of course, include the

employer's providing an adequate safety and training program. *See* the 'general duty' clause, 29 U.S.C. § 654 (a)(1)." (Maryland Counterpart Art. 89, § 32 (a).)

The suggestion of appellant that a MOSHA violation depends upon consideration whether the injured or deceased workman was guilty of contributory negligence as a matter of law was rejected in Federal OSHA cases. In *REA Express, Inc. v. Brennan*, 495 F. 2d 822 (2d Cir. 1974), it was said at 825:

> "In view of the clear purpose of the statute to set new standards of industrial safety, we cannot accept the proposition that common law defenses such as assumption of the risk or contributory negligence will exculpate the employer who is charged with violating the Act."

*See also Clarkson Const. Co. v. Occ. Saf. & Health Review*, 531 F. 2d 451, 457 (10th Cir. 1976). We reject the suggestion in MOSHA cases.

Appellant relies heavily on *Hass, supra*. We find its reliance misplaced. In *Hass, supra*, Judge Levine after referring to many Federal cases before the Review Commission and many on appeal in Federal Circuit Courts of Appeal, stated:

> "The common thread running through the cases, therefore, is that the employer cannot be charged with being an insurer, or be held accountable to a standard of strict liability. As we have indicated, acceptance of the argument advanced by appellee would have the effect of imposing such a standard in this case. Here, the employer undertook all reasonable means to compel its employees to wear their properly attached safety belts. The evidence further shows that two of them were fired for failing to observe this procedure. In short, the Commissioner has failed to indicate 'that demonstrably feasible measures would have

materially reduced the likelihood that such misconduct would have occurred.' For these reasons, the determination respecting standard (1)(8) and the $9,000 penalty assessed against appellant must be reversed." 275 Md. at 333-34, 340 A. 2d 262.

Unlike *Hass*, the employer in the subject case did nothing to assure that the metal ladder would not be "used in areas containing electric circuits to prevent short circuits or electrical shock." Standard 1910.26(c)(3)(viii).

The distinction was considered and discussed in *Ames Crane and Rental Service v. Dunlop*, 532 F. 2d 123 (8th Cir. 1976), wherein it was said at 124-25:

"One of the OSHRC Commissioners dissented on the ground that Ames lacked 'actual or constructive knowledge of the alleged violation,' citing *Brennan v. OSHRC and Raymond Hendrix, d/b/a Alsea Lumber Co.*, 511 F. 2d 1139 (9th Cir. 1975). There, the Ninth Circuit stated:

We fail to see wherein charging an employer with a . . . violation because of an individual, single act of an employee, of which the employer had no knowledge and *which was contrary to the employer's instructions*, contributes to the achievement of the cooperation sought by the Congress.

511 F.2d at 1145 (emphasis added.)

"In the instant case we need not decide whether Ames could be charged with a serious violation if its operator had disregarded clear and adequate safety instructions, because no such instructions were given here. Ames never instructed its crane operators to maintain any specified distance from live power lines. It merely 'made available' several hundred pages of written material which the operators were free to read if they chose to do so.

Such conduct does not fulfill the duty of an employer to take adequate precautionary steps to instruct and train employees to protect against reasonably foreseeable dangers."

We have found two decisions by the Occupational Safety and Health Review Commission [9] involving citations stemming from injury or death incidental to the use of aluminum ladders in the vicinity of energized power lines.

In *Secretary v. Bratcher Company*, OSAHRC Docket No. 83, March 1, 1973, 2 OSAHRC 725, a divided three man commission reversed the holding of the hearing judge that employer had violated OSHA provisions requiring employers to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." [10]

Commissioner Moran was the author of the majority opinion that stated, *inter alia*:

"After a close examination of the evidence on the location of the wires in relation to the building to be painted, the Commission concludes that there was only a remote possibility that respondent's furnishing of either type ladder, or the employees' use of the same, in this specific situation would cause death or serious physical harm.

"This was an unforeseen occurrence and the respondent could not reasonably anticipate that his employees would use the aluminum ladder, or any other ladder which was on his van and available for their use, in any way that it might come in contact with, or in close proximity to, the electrical line.

9. Authorized by 29 U.S.C. § 659 (c).

10. Article 89, § 32 (a), the Maryland counterpart of the Federal Statute, in pertinent part reads as follows:

"(a) Each employer shall (1) furnish to each of his employees employment and a place of employment which are safe and healthful as well as free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees."

"The evidence is not sufficient to sustain a finding that the facts present in this case constituted a violation of section 5(a)(1).

"The Judge's decision and order is set aside. Respondent did not violate the Act as charged." 2 OSAHRC at 727.

Commissioner VanNamee, dissenting, declared, inter alia:

" . . . there was a very real possibility that the furnishing and use of a metal ladder could produce death or serious physical harm. Mechanical devices such as extension mechanisms for extension ladders do stick and do require employees to extend ladders on the ground as was the case here. This condition may reasonably be anticipated by an employer. Similarly, it is more reasonable to anticipate that the employees will raise the fully extended ladder in these circumstances rather than to expect them to shorten the ladder (once extended), then raise it, and then extend it. Finally, when employees are given a free choice (as in this case) to select between wood and metal ladders it is as reasonable to expect them to select the metal as the wood. Indeed, it may be expected that they will select an aluminum ladder over an equivalent wood ladder since the former is lighter in weight.

"On consideration of the facts in this case I must conclude that a reasonably prudent employer would have anticipated the recognized hazard involved and taken steps to eliminate it." 2 OSAHRC at 731.

In the course of his opinion, the hearing judge in *Bratcher* had concluded, *inter alia*:

"Respondent violated Section 5(a)(1) of the Act by furnishing employees with aluminum ladders on or about August 17, 1971, for use where they might come in contact with electric circuits and, thus, failed to furnish employees with employment and a place of employment free from recognized hazards

that could cause or likely cause death or serious physical harm to employees." 2 OSAHRC at 744.

In *Secretary v. Robbins,* OSAHRC Docket No. 789, December 14, 1973, 5 OSAHRC 719, a new Commissioner [11] (Cleary) was the author of the majority opinion affirming the holding of the hearing judge finding a violation under circumstances quite similar to *Bratcher.* Commissioner Cleary's opinion stated, *inter alia:*

> "In our opinion the Judge properly raised the penalty proposed by the Secretary of Labor from $750 to $900, giving heavy weight to the gravity of the violation — *use of an aluminum ladder close to an energized power line and making no effort to eliminate the electrical hazard."* (Emphasis added.) 5 OSAHRC at 719.

The hearing judge's opinion in *Robbins, supra,* had declared, *inter alia:*

> "The evidence supports a finding that respondent's employees performed work in close proximity to high voltage lines which were not denergized [sic], that respondent, through the acts of his on-the-spot supervisory personnel knew the hazard and that he failed to take all necessary measures to insure the safety of the employees." 5 OSAHRC at 725.

The reasoning of the dissenting opinion in *Bratcher, supra,* is persuasive. Moreover, the later decision in *Robbins, supra,* appears to commit the Federal Commission to the views expressed in that dissent.

Article 89, § 38 provides that on judicial review the findings of the commissioner with respect to questions of

---

11. The other commissioners in *Robbins* were Moran and VanNamee, the authors, respectively, of the majority and minority opinions in *Bratcher, supra.* In *Robbins,* Moran was the dissenting commissioner. His dissent, curiously enough, did not encompass the substantive finding that the employer had violated an OSHA standard, but was limited to an expression of his view that the hearing judge had been without legal authority to *increase the penalty* that had been administratively imposed.

272

fact, when supported by substantial evidence, shall be conclusive.

We have carefully examined the subject record and conclude that it contains substantial evidence to sustain the finding that this employer violated standard 1910.26(c)(3)(viii) and that an appropriate penalty was imposed.

*Judgment affirmed.*
*Costs to be paid by appellant.*