572 A.2d 1115

**Eileen M. BRADY et al.**

v.

**The RALPH M. PARSONS COMPANY.**

**No. 1090, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 2, 1990.

**520**

William J. Blondell, Jr. (Edward T. Pinder, on the brief), Baltimore, for appellants.

Edward C. Mackie and Paul J. Weber (Rollins, Smalkin, Richards & Mackie, on the brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and MOYLAN and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

This case presents the question whether the defenses of contributory negligence and assumption of risk were properly submitted to the jury in an action based upon an independent contractor's alleged violation of an assumed duty to ensure a safe workplace for someone other than its own employees. We hold that these defenses were properly submitted to the jury.

On January 18, 1981, Donald C. Brady (decedent),[1] died as a result of injuries he sustained in a fall from a scaffold erected during construction at the Cold Spring Lane Station of the Baltimore Region Rapid Transit System. The decedent was employed as a sheet metal worker with the Rocky Mountain Skylight Co., one of the subcontractors hired to assist in the construction of the station. The Mass Transit Administration (MTA), owner of the Baltimore Subway and its subsidiary stations, entered into three main contracts for the construction of the Cold Spring Station. First, MTA contracted with Hensel–Phelps Construction Company (Hensel–Phelps) to be the general contractor on the project. Hensel–Phelps subcontracted a portion of the construction work to the decedent's employer, Rocky Mountain. MTA also contracted with the Baltimore Regional Insurance Transit Services (BRITS) to design and administer a safety program for the site. The third contract was with the Ralph Parsons Co. (Parsons), appellee herein, to provide, *inter alia*, inspection and safety services for MTA.

Schematically, the contractual relationship among the various parties is shown by the following diagram:

---

1. The decedent was survived by his wife, Eileen Marie Brady, and two children, John Brady and Kimberly Brady.

This appeal arises from Parsons' alleged violation of its contractual safety duties and responsibilities as they relate to events surrounding the decedent's death.

At trial, Edward Kennel, the decedent's co-worker, testified that he and the decedent worked together erecting skylights and cladding.[2] On the day of his death, the decedent had gone up on the scaffolding by himself to prepare the surface in order to replace a piece of cladding which had been improperly fabricated. In preparation for replacing the cladding, the decedent, Kennel and another co-worker erected scaffolding. Kennel stated that, although the use of safety rails or belts would have prevented the fall, they did not have a safety rail on the scaffolding nor did they wear safety belts. Kennel added that they could have spent three to four hours to build or weld something in place of a safety rail but it was not practical since it was only a five- to ten-minute job to install the cladding. Kennel pointed out that in placing the cladding on the columns it was necessary to erect the scaffolding in a certain way and in doing so they could not use safety rails. He also stated that they did not wear safety belts because they could not hook a rope onto a fixed structure.

---

**2.** Cladding is a covering used for the protection of materials which are exposed to the weather or, in some cases, for cosmetic purposes.

Although it was possible to tie off to the columns covered with cladding, that would run the risk of scarring the cladding. Kennel further stated that, if the scaffolding had been moved back, a safety rail could have been installed but he did not know if they could have accomplished the job from that position. Kennel averred that they had erected and used the scaffolding in the same fashion for the past 11 months while installing the cladding. During that time, no safety personnel stopped them from proceeding in that manner.

In April of 1982, the decedent's survivors and the personal representative of his estate filed suit against Parsons for negligent performance of its contractual safety responsibilities at the construction site.[3] The trial court granted summary judgment in favor of Parsons on the basis that MTA was the decedent's statutory employer under the Worker's Compensation Act and Parsons shared MTA's statutory immunity.[4] In *Brady v. Ralph Parsons Co.*, 308 Md. 486, 520 A.2d 717 (1987), the Court of Appeals reversed and remanded, holding that MTA was not the statutory employer of the decedent and hence Parsons could not cloak itself with the immunity protection. *Brady*, 308 Md. at 508, 520 A.2d 717.

On remand, in a special verdict, the jury found Parsons negligent and also found the decedent was contributorily negligent and had assumed the risk. The jury also returned money judgments for appellants. Based on the jury determination of contributory negligence and assumption of

---

**3.** The other parties which were originally named as defendants in this action were dismissed. *Brady v. Ralph Parsons Co.*, 308 Md. 486, 491 n. 7, 520 A.2d 717 (1987).

**4.** Under the Workers' Compensation Act, Md.Code Ann. Art. 101, § 1 *et seq.* (1957, 1985 Repl.Vol., 1989 Cum.Supp.),
"an injured employee may not maintain an action at law for damages against his employer. Since the worker's sole remedy against the employer is a claim under the Act, the employer is considered to be 'immune' from suit at law."
*Brady*, 308 Md. at 498, 520 A.2d 717.

risk, the trial court entered judgment in favor of Parsons. Appellants, the decedent's surviving family and the personal representative of his estate, appeal from that judgment, alleging that the trial judge erred by instructing the jury on contributory negligence and assumption of risk. As a second assignment of error, appellants allege the trial court erred in excluding the testimony of Carl Silver, Ph.D., an expert in the field of human engineering.

## PARSONS' DUTY

Appellants' primary contention is that the trial judge erred by instructing the jury on the issues of contributory negligence and assumption of risk. The basis of this contention is that the statutory safety obligations Parsons contracted to assume constituted a nondelegable duty to ensure compliance with the applicable safety regulations. They further argue that this duty to provide safety measures was absolute and, therefore, Parsons cannot assert that the decedent was contributorily negligent or assumed the risk. Although we agree with appellants that Parsons owed the decedent a duty, we see the nature and extent of the tort duty owed differently than appellants.

The problem with appellants' argument is that the principles they rely upon and cite do not apply to the instant case. Before we explain why appellants' argument is misplaced, we must first discuss the nature and extent of Parsons' duty to maintain a safe workplace pursuant to its contract with MTA.

## THE CONTRACT

MTA entered into a contract with Parsons to be the construction manager during the construction of the station. In this role, Parsons was to provide construction management, supervisory, inspection and safety services for MTA.

MTA also contracted with the Baltimore Regional Insurance Transit Services (BRITS) to design and administer a

safety program. To this end, BRITS prepared a safety and reporting procedure manual (MTA Construction Safety Manual) to establish a "practical, sound and effective program for the prevention of accidents, as well as the assignment of specific responsibilities to contractors for program compliance."

According to the contract with MTA, Parsons was required to

"provide safety engineering services, coordinated with BRITS, necessary to develop and ensure the application of a uniform system of safety and accident prevention and reporting procedures. The CM [construction manager] shall also provide safety engineering services as required to ensure compliance with the provisions of the MTA Construction Safety Manual; the contractual obligations of MTA contractors, other applicable guidance. The CM shall also direct contractors to correct any unsafe acts or conditions that may be detected."

Parsons' contract § 2.02.2HH.

The MTA Construction Safety Manual set forth a safety program to be administered and required that the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651 *et seq.* (OSHA) and the Maryland Occupational Safety and Health Act of 1973, Art. 89, §§ 28 *et seq.* (MOSHA) regulations be followed on all work. During the construction phase of the project, Parsons was required to

"[p]rovide a qualified, full-time, on-site supervisory staff for the management and inspection of all construction work being performed on the Project."

Among other responsibilities, the staff was supposed to

"[r]ecommend construction techniques to expedite the Project and assure job safety."

Parsons' contract at § 2.02.2G(5).

Pursuant to its contract, Parsons prepared a Manual for Construction Management Services which provided policies and procedures to be followed to ensure compliance with its contractual obligations with MTA. The manual is replete with references to Parsons' safety responsibility. Parsons'

chief safety engineer was responsible for the implementation and enforcement of the safety plan for the overall construction program.   His specific duties included:

"a) Implement the MTA's safety program to eliminate accidents, promote maximum efficiency through safe work methods and conditions and the reduction of direct and indirect costs of accidents.

"b) Make frequent and unscheduled inspection of the work in progress and report hazards or unsafe practices to the Resident Engineers for immediate action or remedy.

"c) Conduct regular safety meetings with the Contractor's foreman and representatives of the various crafts employed on the construction program.

"d) Assure compliance with OSHA and MOSHA safety requirements and applicable codes.

\* \* \* \* \* \*

"f) Ensure the contractors' compliance with the provisions of the MTA Construction Safety Manual.

"The Chief Safety Engineer will coordinate the safety program with the MTA's insurance representatives to develop, monitor, and ensure a uniform system of safety, accident prevention, and reporting procedures.

"Construction plans will be reviewed to identify and eliminate possible hazards, and to assure compliance with MOSHA standards."

Parsons' manual 4.2.1.   In addition, the chief safety engineer was authorized to order a work stoppage if unsafe conditions existed.   Parsons' manual at 4.2.2(d).

Appellants contend that Parsons owed a duty to the decedent as a result of its assumption of the contractual responsibility to comply with OSHA and MOSHA regulations.   To the contrary, Parsons alleges that the duty to maintain a safe workplace under OSHA and MOSHA exists only between employers and their own employees.   Hence, Parsons argues, since it was not the employer of the decedent, OSHA and MOSHA imposed no duties upon it with respect to the decedent.   We disagree.

■ In *Murphy v. Stuart M. Smith, Inc.*, 53 Md.App. 640, 455 A.2d 69, *cert. denied*, 296 Md. 61 (1983), we stated that, generally, the duty created by MOSHA runs from the employer to its own employees. We pointed out, however, that there are circumstances under OSHA where the employer's duty to maintain a safe workplace may be owed to someone other than its own employees. One of these circumstances is where the employer "voluntarily assumed a duty to comply with OSHA regulations for the benefit of persons other than his own employees." *Murphy*, 53 Md. App. at 643, 455 A.2d 69.[5]

In *Murphy*, appellant was injured allegedly due to defective lighting on the premises which were leased to his employer by appellee in that action. Appellant alleged that the owner of the premises owed him a duty under MOSHA to provide a safe place of employment. In holding that the owner of the premises had no duty under MOSHA, we stated:

"[W]e are a Court purposed to decide cases on the facts presented rather than proclaim in black letter the applicability of law for all purposes.... It will suffice that under the facts of this case the Maryland Act is clearly limited, placing the duty on the 'employer' for the benefit of 'his employees.'"

*Murphy*, 53 Md.App. at 644, 455 A.2d 69.

■ We acknowledged, however, the "assumed duty exception" in *Murphy*, although it was not factually relevant

---

**5.** We also observed another exception in *Murphy* whereby an employer has "either actually created a hazardous condition which violated specific OSHA regulations and to which its own and another's employees were exposed ... or had actual and substantial physical control over the work area, and actual responsibility for the hazardous condition." *Murphy*, 53 Md.App. at 643, 455 A.2d 69.

Later, in *Baltimore Gas & Electric Co. v. Thompson*, 57 Md.App. 642, 651–52, 471 A.2d 768 (1984), we adopted and applied this exception and held that an employer owed a duty to provide a safe place of employment, not only to its own employees, but also to another's employees. Appellants do not contend, nor do we find this exception applicable as a source of Parsons' potential liability.

there. (*See Baltimore Gas & Electric Co. v. Thompson,* 57 Md.App. 642, 651, 471 A.2d 768 (1984), noting that *Murphy* implicitly acknowledges the hazardous condition/control of the work area exception, discussed in n. 5.) This exception is relevant here since Parsons assumed the responsibility for safety on the construction site. Moreover, although we have not expressly adopted the "assumed duty exception," Maryland appellate courts have utilized the policy behind it as a basis for imposing liability: that is, where a duty of due care has been assumed by contract or conduct, a worker not in privity is protected.

This policy was examined in *Krieger v. J.E. Greiner Co.,* 282 Md. 50, 382 A.2d 1069 (1978), where the Court of Appeals addressed the law relative to contracts of engineers and their liability to an employee injured on the job. In *Krieger,* a construction worker employed by a subcontractor of the general contractor was injured while working on the Harbor Bridge construction project. The subcontractor and general contractor were immune under worker's compensation laws. The owner of the project, the State of Maryland, was not immune under the worker's compensation laws, but was entitled to sovereign immunity. Krieger, therefore, filed suit against the project engineers who had been hired by the State to perform engineering services. Krieger alleged that the engineers owed a duty of care to him by reason of their contracts with the State. Krieger further alleged that the engineers had assumed a duty to stop work whenever they observed improper construction practices because they had done so on prior occasions. The Court stated that, in order for the engineers to be liable to an injured worker, it was necessary to find a breach of a duty by the engineer to the worker. The Court added that such duty must arise either from a contractual provision placing that responsibility on the engineer or that the engineer had assumed responsibility for safety. *Krieger,* 282 Md. at 69, 382 A.2d 1069.

Also, in *Cutlip v. Lucky Stores, Inc.,* 22 Md.App. 673, 325 A.2d 432, *cert. denied,* 273 Md. 719 (1974), an architec-

tural firm contracted with Lucky Stores to design and supervise the construction of a department store. Cutlip, while employed by a structural subcontractor on the project, was killed on the job when a portion of the building collapsed. As in *Krieger*, both Cutlip's employer and the general contractor were immune under workers' compensation law. Cutlip's representatives filed a wrongful death action against Lucky Stores and the architect. We held that the supervisory authority assumed by the architect under his contract to the County subjected him to a duty which covered the deceased. *Cutlip*, 22 Md.App. at 694, 325 A.2d 432. Hence, under Maryland law, supervising and consulting engineers and architects may owe a duty to workers with whom they have no privity, by virtue of the terms of the contract or by a voluntary assumption of duties.

Imposing a duty on those who have assumed the responsibility to comply with safety regulations simply reinforces the policy of holding liable those who have assumed a duty of due care. This is particularly true where, as here, there is a multi-employer worksite where employees of a number of contractors are present.

In light of the policy set forth in *Krieger* and *Cutlip*, we conclude that one who assumes the contractual obligation to supervise and enforce safety on a multi-employer worksite owes a duty of reasonable care to a worker even though he or she has no contractual privity. Since the "assumed duty exception" encompasses this conclusion, we hereby adopt that exception.

In applying the "assumed duty exception" to the instant case, it is obvious that the provisions in Parsons' contract with MTA and its related documents required Parsons to supervise, implement and enforce safety programs in connection with the construction project. In fact, Parsons does not contest this. *See Brady*, 308 Md. at 493, 520 A.2d 717. We therefore hold that, by assuming these responsibilities, Parsons owed the decedent a duty to enforce safety mea-

sures on the worksite in compliance with OSHA and MO-SHA regulations. Since the jury found Parsons negligent, we proceed to the crux of appellants' argument: are the defenses of contributory negligence and assumption of risk barred in this case?

### —The Affirmative Defenses—

■ Appellants suggest that, since OSHA and MOSHA were designed to protect workers from injury and to ensure a workplace free from recognized hazards, it would be inconsistent with the purpose of the statutes to allow the interposition of these defenses. The purpose of these types of statutes is to protect a particularly vulnerable class of people from hazards in a definable environment which they themselves are incapable of avoiding. Workers earning their livelihood in dangerous occupations are rarely in a position to protect themselves from accidents, having the choice of working with the equipment or conditions at hand or not working at all. To permit the employer to assert contributory negligence or assumption of risk would, in large measure, defeat the object of the statute. *See* Prosser & Keeton on Torts § 65 at 461–62 (contributory negligence) and § 68 at 493 (assumption of risk) (5th ed. 1984). Based on this reasoning, a number of courts have held these defenses unavailable in cases where the defendant's liability is premised upon the violation of a statute requiring employers to furnish a safe place to work.[6] This is further

---

**6.** *See Wren v. Sullivan Electric, Inc.,* 797 F.2d 323, 326–27 (6th Cir. 1986) (action by construction worker against subcontractor who was not his employer—contributory negligence and assumption of risk improperly placed before jury as this would be equivalent to repealing the statute); *Bowman v. Redding & Co.,* 449 F.2d 956, 965–67 (D.C.Cir. 1971) (action against general contractor and subcontractor—defense of ordinary contributory negligence barred since otherwise purpose of statute would be defeated); *Hewitt v. Safeway Stores, Inc.,* 404 F.2d 1247, 1249–50 (D.C.Cir.1968) (action against defendant to whose warehouse plaintiff was sent to pick up supplies on the ground that worksite was unsafe—assumption of risk barred as a matter of law, *see* n. 8, *infra.*); *Fonseca v. Orange County,* 28 Cal.App.3d 361, 104 Cal.Rptr. 566, 570–71 (1972) (action against county by employee who

supported by Restatement (Second) of Torts §§ 483 and 496F which also preclude contributory negligence (§ 483) and assumption of risk (§ 496F) as defenses to a violation of a statute if the effect of the statute is to place the entire responsibility for the harm that has occurred upon the defendant.

Maryland, however, has not taken this position. Prior to the enactment of MOSHA, the Court of Appeals was faced with the question of what defenses were available where a safe workplace was not provided. In *Lawrence v. Cavanaugh*, 249 Md. 176, 179, 238 A.2d 859 (1968), the Court of Appeals held that the defense of assumption of risk is not barred if the employer breaches his or her duty to furnish a safe place of employment under Md.Code Ann.Art. 89, § 29 (1957) which provided:

> "Every employer shall furnish and maintain employment and a place of employment which shall be reasonably safe for employees. Every employer shall install, maintain and use such methods, processes, devices and safeguards, as are reasonably necessary to protect the life and safety of such employees, and shall do every other thing reasonably necessary to render safe such

fell from bridge while employed by bridge builder; no scaffolding or railings had been installed—contributory negligence not barred but assumption of risk barred since public policy insists that in light of weak economic position employee's knowledge of danger should not insulate the defendant from liability); *Martin v. George Hyman Construction Co.*, 395 A.2d 63, 71–74 (D.C.1978) (action against general contractor—defense of contributory negligence barred because otherwise the congressionally imposed duty and intent would be frustrated); *Baker v. Ohio Ferro–Alloys Corp.*, 23 Ohio App.2d 25, 261 N.E.2d 157, 165–68 (1970) (action against owner of premises where employee of construction company hired by the defendant was killed—contributory negligence not barred but assumption of risk barred since inequality in bargaining power renders employees' actions involuntary in intentionally proceeding in face of known hazard). *See also* 56 C.J.S. *Master & Servant* §§ 369, 425 (1948); 53 Am.Jur.2d *Master & Servant* §§ 225, 267 (1970).

employment and place of employment." [7]

In so holding, the Court reasoned that the statute neither provided a remedy to an employee nor abrogated the defense of assumption of risk if the employer breached its duty to furnish a safe place to work.[8] *Lawrence,* 249 Md. at 179, 238 A.2d 859.

Moreover, in *Thompson,* where we imposed a duty upon someone other than the injured employee's employer to maintain a safe workplace, we held that whether the employee assumed the risk was a question for the jury.

Other Courts adhere to this principle that a violation of a statute which requires employers to furnish a safe place to work does not deprive the employer of the defenses of contributory negligence and assumption of risk unless the statute expressly abrogates the defenses.[9]

---

**7.** Article 89, § 29 was later repealed when Maryland enacted the Maryland Occupational Safety and Health Act, Art. 89, §§ 28 *et seq.,* 1973 Md.Laws ch. 59. Section 32 replaced the old § 29 and set forth the basic responsibilities of employers and employees. Section 32 provides in pertinent part:

"(a) Each employer shall (1) furnish to each of his employees employment and a place of employment which are safe and healthful as well as free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees, and (2) comply with the rules, regulations, standards and orders promulgated under this subtitle.

"(b) Each employee shall comply with the provision of this subtitle and all rules, regulations, standards and orders issued pursuant to the authority of this subtitle which are applicable to his own actions and conduct in the course of his employment."

**8.** Appellants rely on *Hewitt v. Safeway Stores, Inc.,* 404 F.2d 1247 (D.C.Cir.1968), which, in interpreting Art. 89, § 29, held that assumption of risk is no defense to such a safety statute. *Hewitt,* 404 F.2d at 1250. *Hewitt* is contrary to the holding in *Lawrence,* which was decided one month after *Hewitt,* and thus is not the law in Maryland.

**9.** *See Carroll v. Getty Oil Co.,* 498 F.Supp. 409, 416–17 (D.Del.1980) (action against parent oil company and subsidiary by injured employee of independent contractor—contributory negligence and assumption of risk not barred where legislature has not abrogated defenses; especially since legislature did abrogate these defenses in workers' compensation cases but held to be available in actions brought against third party tort-feasors); *Krall v. Royal Inns of America, Inc.,* 374

In light of the *Lawrence* and *Thompson* holdings, we would contradict established precedent if we were to adopt appellants' position. We are mindful, however, that *Lawrence* was decided before MOSHA was enacted and that in *Thompson* no exception was taken to the instructions, but instead the question was whether the employee assumed the risk as a matter of law. Hence, we are reluctant to use prior case law as the sole basis for our holding. We explain.

MOSHA was not enacted to create an action for damages in favor of an employee. This is manifest from the preventive and noncompensatory nature of MOSHA. The Act is designed not to punish but, rather, to achieve compliance with safety standards and the abatement of hazards. Under the Act, no remedy is provided to the employee. Instead, a penalty is imposed on the employer who has been cited for an unsafe condition. In fact, the statute may be violated even though no accident or injury occurs. To this end, we have held that the assumption of risk and contributory negligence defenses will not exculpate an employer who is charged with a violation under MOSHA. *Mardo Homes, Inc. v. Commissioner of Labor and Industry*, 35 Md.App. 260, 267, 370 A.2d 144 (1977).

*Mardo Homes,* however, does not apply in tort actions since it is only controlling to the extent that an employer, who has been cited with a violation under MOSHA, may not assert these defenses. A citation for a safety violation is

---

F.Supp. 146, 150 (D.Alaska 1973) (action by worker for injuries sustained on construction job—contributory negligence not barred since legislature did not place the entire responsibility for harm on the defendant as employees also have a duty to promote safety and no mention in statute of nonavailability of contributory negligence); *Bachner v. Rich,* 554 P.2d 430, 439 (Alaska 1976) (action by injured worker against general contractor—contributory negligence available defense for same reasons set forth in *Krall* ); *Rabar v. E.I. duPont de Nemours & Co.,* 415 A.2d 499, 509 (Del.Super.Ct.1980) (contributory negligence available in an action by injured worker against company that contracted with injured worker's employer and any change in this rule must be done by legislature). *See also* 56 C.J.S. *Master & Servant* § 425 (1948); 53 Am.Jur.2d *Master & Servant* §§ 225, 265 (1970).

entirely distinct from the type of claim at issue here, namely, a civil cause of action for damages in a personal injury action against a third party who is not the decedent's employer.

Under this scenario, we do not believe that Parsons had the direct "employer" responsibility anticipated by MOSHA and OSHA in implementing the required safety measures. The underlying rationale for placing the primary responsibility on employers under MOSHA and OSHA is that the "employer" is best able to ascertain the risks involved in the work of its own employees and enforce safety regulations by its control over its employees. In fact, in the instant case, Rocky Mountain, the decedent's employer, was cited for the violation which resulted in the decedent's death. It is apparent that MTA and Parsons did not intend to place the entire responsibility on Parsons as an "employer" but only sought to incorporate MOSHA and OSHA into their contract as discernible standards for safe construction. When Parsons undertook independent safety responsibilities pursuant to its contract with MTA, it assumed a duty to exercise reasonable care in performing this obligation. *See* Restatement (Second) § 324A.[10] This assumed duty was separate although collateral to the duty imposed upon the "employer" under MOSHA and OSHA. Hence, since MOSHA and OSHA did not apply to Parsons by their own force, *see Rabar*, 415 A.2d at 505, Parsons' source of tort liability does not stem from a statutory violation. Rather, we conclude that Parsons' negligence resulted from its

---

**10.** Section 324A provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

failure to exercise due care in its duty to the decedent to monitor safety. Since contributory negligence and assumption of risk are normally complete bars to an action for negligence and since we are cited to no Maryland authority to the contrary, we hold appellants' claim of error without merit.[11] Hence, the instructions were properly submitted to the jury.

We cannot conclude, however, without commenting on why the principles appellants rely on are misplaced. We initially point out that

"[t]he nature and extent of a tort duty recognized by law depends in part on the status of the party upon whom it is sought to be imposed and upon his relationship to the party claiming the benefit of it."

*Parker v. Neighborhood Theatres, Inc.*, 76 Md.App. 590, 595, 547 A.2d 1080, *cert. denied*, 314 Md. 193, 550 A.2d 381 (1988).

Appellants first posit that Parsons "assumed a non-delegable duty of safety," relying principally on *Gardenvillage Realty v. Russo*, 34 Md.App. 25, 366 A.2d 101 (1976). In *Gardenvillage*, we imposed a nondelegable duty on the

---

**11.** This is consistent with the Court of Appeals conclusion in *Brady.* The Court stated that Parsons stood "in no different position than any third party liable to suit at law under section 58 [of the Workers' Compensation Act]." *Brady*, 308 Md. at 508, 520 A.2d 717. Under the Maryland Workers' Compensation Act, § 15, an employer cannot assert the defenses of contributory negligence and assumption of risk in actions brought by employees seeking compensation from their employers for injuries sustained in accidents arising out of and in the course of employment. Under § 58, however, a person who is entitled to worker's compensation may recover damages where injury or death was caused under circumstances creating a legal liability in some person other than the employer. In such an action, the third party may interpose the defense of contributory negligence whereas the statutory employer cannot. *Virginia Dare Stores, Inc. v. Schuman,* 175 Md. 287, 298, 1 A.2d 897 (1938).

Since Parsons stood "in no different position" than a third party sued in an ordinary negligence action under § 58, who can interpose defenses against the employee, we see no compelling reason to preclude Parsons from using these defenses merely because the negligence occurred in the context of a duty to ensure safety.

owner of the premises in favor of tenants and their invitees, resulting from the collapse of a defective concrete porch slab. The slab had been constructed and installed by a subcontractor. We held that the Baltimore Building Code imposed upon the owner a nondelegable duty to build the structure in accordance with the Code.[12] Appellants assert that the reasoning in *Gardenvillage* is the source of Parsons' duty. They argue that Parsons assumed a nondelegable duty of safety since it was charged with compliance with OSHA and MOSHA. As previously discussed, we do not see a nondelegable duty as a source of Parsons' liability. In addition, the factual situation in *Gardenvillage* is clearly inapposite to the instant case. In *Gardenvillage* a statutory nondelegable duty was imposed on the owner for the benefit and protection of innocent members of the public. By contrast, Parsons was not the owner of the project, nor was the decedent an innocent member of the public.

In addition to a landowner, a nondelegable duty also makes an employer liable for the negligence of an independent contractor in failing to maintain premises in a reasonably safe condition, irrespective of whether the employer is at fault. Such a duty requires the employer to answer for the care exercised by the one to whom the performance of the duty is entrusted. *Rowley v. Mayor of Baltimore*, 305 Md. 456, 463, 505 A.2d 494 (1986) (nondelegable duty of employers is for the benefit of members of the public and adjacent landowners). Moreover, this principle is inappropriate under the facts in the instant case since MTA entrusted the performance of safety compliance to Parsons. Hence, the nondelegable duty theory would only apply in an action against MTA and MTA was immune.

---

**12.** *Gardenvillage* did not involve the issue of affirmative defenses, but dealt solely with the nature of the owners' duty and the extent of its liability toward its tenants. Appellants arrive at the conclusion that *Gardenvillage* imposes an absolute duty to comply with a safety code and therefore any affirmative defenses are barred. This was not the holding in *Gardenvillage.*

■ Finally, appellants assert that Parsons' alleged violation of a safety statute constitutes negligence *per se.*[13] From this, appellants proceed to the conclusion that the defenses of contributory negligence and assumption of risk are barred. Both appellants' assertion and conclusion are incorrect. First of all, in Maryland, the violation of a statute does not constitute negligence *per se.* Rather, the breach of a statutory duty may be considered evidence of negligence. *Pahanish v. Western Trails, Inc.,* 69 Md.App. 342, 363, 517 A.2d 1122 (1986).

■ Secondly, although there is no debatable issue as to the existence of negligence, in negligence *per se* the defenses of contributory negligence and assumption of risk are ordinarily still available to the defendant. Prosser & Keeton, *supra* at § 36. Hence, appellants are incorrect in their assertion that a finding of negligence *per se* bars the defendant from using these defenses. Accordingly, for the aforementioned reasons, we find appellants' allegations and conclusions thereof of a nondelegable duty and negligence *per se* inapposite to the instant case.

## EXPERT TESTIMONY

■ Appellants also complain that the trial court erred in not permitting Carl Silver, Ph.D., an expert in the field of human engineering, to testify on the issue of whether the decedent appreciated the risks associated with his job and the ability of Parsons to avoid those risks. Appellants claim that Silver's testimony would have been relevant regarding the decedent's lack of contributory negligence and assumption of risk.

---

**13.** Appellants rely on *Kelley v. Howard S. Wright Construction Co.,* 90 Wash.2d 323, 582 P.2d 500 (1978), which held that a general contractor owed its subcontractor's employee a statutory duty to furnish a safe place to work and the breach thereof was negligence *per se.* This did not, however, preclude application of the jurisdictions' comparative negligence statute so as to reduce the award to the injured employee. *Wright,* 582 P.2d at 510.

Appellants' counsel proffered Dr. Silver as an expert in human engineering and stated:

"The—this expert will testify as to the impact human engineering has on designing safety programs in the necessity of taking into consideration human factors in deciding safety and the fact that safety must be pre-planned. That because of these human factors, he will point out further that it's necessary, as he partially mentioned in his qualifications, that human fallibility being what it is, you do not allow—you do not rely upon workers to understand a slogan to prevent injuries, but you plan the jobs and what have you so that the job cannot only be done in a safe way, or if the job cannot be done in a safe way, so that you can prevent injury from occurring if that injury foreseeably could occur. These are all in the area of—in the areas of human engineering.

Earlier, Dr. Silver explained that

"human engineering is a field which draws upon the knowledge of human behavior that is involved in experimental psychology and physiology and other fields like that and combines it with the techniques of engineering in order to insure the tasks that people are performing and the equipment that people are using will allow safe and effective performance.

"It involves designing ways to get information to people, for example, through warning signs or warning lights or bells, or anything of that nature. It includes the design of tools and controls and working spaces with always as the two goals to optimize human efficiency and to maintain human safety."

At the conclusion of the voir dire, the trial judge ruled that the proffered testimony was irrelevant, stating:

"This man is a theoretician who is talking in the abstract and the standard to be applied to the litigants in this case as [sic] ordinary reasonable people."

The standard for the admissibility of expert testimony is whether the finder of fact can receive appreciable help from

an expert on the subject matter. McLain, *Maryland Evidence* § 702.1 (1987). Here, Dr. Silver was described as an expert in human factors and the proffered testimony was to assist the jury in making inferences regarding whether the decedent appreciated the risks associated with his job. His opinion would have been merely an inference based on facts previously presented—an inference which the jury could make without the help of an expert. Hence, the testimony was not needed to establish whether the decedent appreciated the risks since it is common knowledge that a reasonable person in the position of the decedent (37 feet high on a scaffolding without safety rails) would have appreciated the risk, but that a person who performs this type of operation daily has a tendency to depreciate those risks. In fact, Kennel, Brady's co-worker, made this quite clear. Moreover, Dr. Silver's testimony calls for an opinion on the decedent's mental processes which is beyond his expertise or information. *See Williams v. State*, 231 Md. 83, 86, 188 A.2d 543, *cert. denied*, 375 U.S. 851, 84 S.Ct. 109, 11 L.Ed.2d 78 (1963).

Finally, an expert's opinion has no probative force unless there is a sufficient basis to support his or her conclusion. *Bohnert v. State*, 312 Md. 266, 275, 539 A.2d 657 (1988). In the instant case, appellants' counsel did not establish any underlying technical or scientific principle that was sufficiently reliable upon which to base his conclusion. The trial judge has broad discretion in the admissibility of expert testimony, *Bohnert*, 312 Md. at 275, 539 A.2d 657. We cannot find that the trial judge abused his discretion in his refusal to permit Dr. Silver's testimony.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.